Jesse L. JACKSON, Sharon T. Wilkinson and Melvin M. Maclin, Plaintiffs,

v.

Richard OGILVIE, Governor of the State of Illinois, Chairman of the State Electoral Board of the State of Illinois, et al., Defendants.

No. 70 C 3079.

United States District Court,
N. D. Illinois, E. D.

Jan. 28, 1971.

Judgment Affirmed June 21, 1971.
See 91 S.Ct. 2247.

Thomas N. Todd, Robert L. Tucker, Kermit B. Coleman, Chicago, Ill., for plaintiffs.

Richard L. Curry, Corp. Counsel, for John C. Marcin.

William R. Ming, Jr., Andrew M. Raucci, Howard Miller, Chicago, Ill., for Stanley T. Kusper, Jr., Marie H. Suthero, and Francis P. Canary.

William J. Scott, Atty. Gen., for Richard Ogilive, William J. Scott, John Lewis, Charles W. Woodford, Michael J. Howelett, James Rinan, Victor L. Smith.

Before PELL, Circuit Judge, and PERRY and LYNCH, District Judges.

## MEMORANDUM OF DECISION

### PER CURIAM.

Plaintiff, Jesse L. Jackson, is a citizen of the State of Illinois, qualified to run for elective office as an independent candidate. Plaintiffs Sharon T. Wilkinson and Melvin M. Maclin are qualified electors of the State of Illinois who would support plaintiff Jackson were he to seek public office. All plaintiffs assert that they want to participate in the total election processes of the State of Illinois, but that due to certain provisions of the Illinois Election Code of 1943, 46 Ill.Rev.Stat. § 1–1 et seq., they are prevented from participating on an equal footing with those who seek public office as representatives of established political parties. Plaintiffs assert that this alleged disadvantage denies them rights secured by the Equal Protection Clause of the fourteenth amendment. Further, they assert that the allegedly diverse requirements of the Illinois Election Code violate first amendment guarantees of free association and the fifteenth amendment recognition that the right to vote extends to all citizens. Plaintiffs, assuming *arguendo* that they possess the requisite standing, have alleged a violation of rights secured by the United States Constitution. Further, they assert that these deprivations occur under color of state law. Accordingly, jurisdiction obtains pursuant to 28 U.S.C. § 1343(3). The plaintiffs also have sought declaratory relief and other equitable remedies under 28 U.S.C. § 2201 and § 2202. Thus, jurisdiction is also predicated on 28 U.S.C. § 1343(4).

Plaintiffs moved for an injunction pursuant to 28 U.S.C. § 2281. Accordingly, a three-judge district court was convened pursuant to 28 U.S.C. § 2284. Plaintiffs moved for a temporary restraining order before the single district court judge. After an evidentiary hear-

ing the requested injunctive relief was denied. Subsequently a three-judge court was empanelled. Prior to the hearing by the full panel, plaintiffs filed a motion for summary judgment. Certain defendants filed motions to dismiss. Since we find that plaintiffs' challenges to the Illinois Election Code are not well founded, it is unnecessary to decide the various pending motions to dismiss.

■ Before turning to the merits of this matter it is necessary to dispose of certain threshold issues. Clearly the issues presented to this court are justiciable. Baker v. Carr, 369 U.S. 186, 82 S. Ct. 691, 7 L.Ed.2d 663 (1962); Wesberry v. Sanders, 376 U.S. 1, 5–7, 84 S.Ct. 526, 11 L.Ed.2d 481 (1963). Further, these plaintiffs enjoy standing to sue. Jesse L. Jackson states that he seeks to qualify for public office. The other plaintiffs assert that they wish to support him in his candidacy. Plaintiffs jointly assert that they are denied equal protection. In Baker v. Carr, *supra,* the Supreme Court determined that qualified state electors had standing to challenge state apportionment schemes. Thus, standing was conferred on the plaintiffs in *Baker* because their right to vote was impaired. Since the right to hold public office is a necessary concomitant of the right to vote, we can perceive no valid reason to deny these plaintiffs standing to sue.

■ Certain defendants contend that this matter is not properly before a three-judge court. These defendants assert that since the election here is only a municipal one the jurisdictional requisite of statewide action is missing. While it is true that jurisdiction of a three-judge court is limited to cases concerning statewide action, nonetheless a three-judge court may entertain an action against local officers where those local officers are "performing a state function that embodies a policy of statewide concern." C. A. Wright, Handbook of the Law of Federal Courts, 190 (2nd ed. 1970). See also Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935).

The provisions of the Illinois Election Code do evince a policy of statewide application and concern, and accordingly the matter is properly before this court.

These plaintiffs challenge those provisions of the Illinois Election Code that establish the requirements to be met by an independent candidate in order for his name to appear on the ballot for a particular election. An independent candidate for any office in this state must secure nominating petitions containing a number of signatures constituting more than 5% and less than 8% of the total number of votes which were cast in the last preceding election for the office he currently seeks. 46 Ill.Rev.Stat. § 10–3. Since plaintiff Jackson seeks to qualify for the office of Mayor of Chicago he is required to obtain some 58,000 to 90,000 signatures. The plaintiffs also assert that § 10–4 of the Illinois Election Code unfairly limits the class of possible signatories to plaintiff Jackson's nominating petitions. The plaintiffs assert that this limitation further circumscribes Jackson's political efforts, and operates to effectively deny him access to political office.

The provisions of the Illinois Election Code that identify proper signatories to an independent candidate's nominating petition provide:

"That any person who has already voted at a primary election held to nominate a candidate or candidates for any office or offices, to be voted upon at any certain election, shall not be qualified to sign a petition of nomination for a candidate or candidates for the same office or offices, to be voted upon at the same certain election." 46 Ill.Rev.Stat. § 10–4.

Plaintiff asserts that this provision bars any person who voted in the last mayoral party primary from signing a nominating petition for plaintiff Jackson. Plaintiff Maclin purports to be a potential signatory thus denied.

■ Section 10–4 of Illinois Election Code does not disqualify a signatory unless, prior to signing the nominating pe-

tition for an independent, he has voted in a party primary for a party candidate for the same office in the same year that the independent candidate seeks. Thus, in order for a signatory to be disqualified, he must vote in a specific political primary and *thereafter* sign an independent nominating petition.

The provisions of the Illinois Election Code require that nominating petitions for independent candidates be filed 64 days prior to the date set for an election. 46 Ill.Rev.Stat. § 10–6. Pursuant to the provisions of the Illinois Election Code city officers are to be chosen on the first Tuesday of April. 46 Ill.Rev. Stat. § 2–29. Primaries for offices to be filled on the first Tuesday in April in cities of 500,000 must be held on the last Tuesday in February. 46 Ill.Rev.Stat. § 7–5. Therefore all primaries for the office of Mayor of the City of Chicago will necessarily occur at a time that is less than 64 days prior to the date of the mayoral election. Thus, under the Illinois Election Code as currently drawn it is not factually possible for plaintiff Maclin to be denied the right to sign a nominating petition for plaintiff Jackson. The Illinois Election Code does not bar Maclin or any other individual from signing a nominating petition unless he has already voted in a primary for another candidate for the same office in the same year. Since our reading of the requirements of the entire Election Code convinces us that it is not possible for such a sequence to occur, there appears to be no possibility that plaintiff Maclin would be prevented from signing a nominating petition for Jackson.

Accordingly, this court finds § 10–4 of the Illinois Election Code, 46 Ill.Rev. Stat. § 10–4, does not disenfranchise plaintiff Maclin and that in this regard it is constitutional.

■ Plaintiff Jackson also challenges § 10–4 of the Illinois Election Code on the ground that this provision restricts the availability of potential signatories. As we noted above § 10–4 does not pre-

vent any qualified signatories from signing a nominating petition for Jackson. The statutory scheme of the State of Illinois establishes and secures by statute the mandate of Baker v. Carr, *supra,* and its progeny. *Baker* requires that one elector must have one vote. Under the Illinois Election Code an elector is offered an option. He may sign a petition for an independent candidate. If he signs such a petition he is not qualified to vote in a primary election for a candidate seeking the same office as the independent who he supports. 46 Ill.Rev.Stat. § 7–43(c). Further, were it possible for a primary election to occur prior to the date for filing nominating petitions, then voting in a primary would prevent an elector from supporting an independent. Thus, the state's scheme attempts to insure that each qualified elector may in fact exercise the political franchise. He may exercise it either by vote or by signing a nominating petition. He cannot have it both ways. Such a requirement seems not only fair but mandatory under the holding in Baker v. Carr, *supra.*

Plaintiff Jackson also challenges the 5% to 8% requirements for nominating signatures set out in § 10–3 of the Illinois Election Code. At the outset it is crucial to note that having obtained sufficient signatures plaintiff Jackson's name would appear on the ballot as a candidate for Mayor. Jackson asserts that this requirement when compared with the requirement for the candidate for the established political parties operates in a manner inimical to the Equal Protection Clause of the fourteenth amendment and the first amendment right of free association.

■ Jackson asserts a denial of rights fundamental to liberty. The right to vote is fundamental in that it is preservative of all other individual rights. Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Unquestionably the right to freedom of association is a concomitant of the right to vote and exists coterminously with it.

Before a state can in any way regulate first amendment rights it must be shown that a compelling state interest justifies such regulation. NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968).

■ Jackson argues that the 5% minimum requirement of § 10–3 of the Illinois Election Code operates to limit his and plaintiffs Wilkinson's and Maclin's first amendment rights. He asserts that before they can act to advance his candidacy they must be joined by a group numbering approximately 58,000 qualified electors of the city. The question more pointedly is, can the state limit the availability of the ballot to only those candidates who evidence the support of 5% of the electorate? We think it can. In Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970), the court noted:

"A state clearly has a substantial interest in administering its own local elections. This state concern reasonably includes regulation of candidates, and it may well call for limitations on access to ballots by those seeking public office. Such limitations may be justified by the need to prevent subversion or corruption."

While the 5% requirement is higher than the percentage required in a majority of other states (see Williams v. Rhodes, *supra*, 393 U.S. 33 n. 9, 89 S.Ct. 5) nonetheless we feel it is a reasonable limitation that serves a compelling state interest.

As we noted previously, meeting the compelling state interest test is not in itself adequate to insure that limitations on first amendment rights comport with the requirements of due process. Indeed to meet those requirements a state must narrowly and fairly draw its statutory provisions. *Briscoe, supra.* We determine that the 5% requirement is sufficiently narrow to satisfy due process. There remains only the issue of fairness. Simply put, does the percentage require-

ment set forth in § 10–3 of the Illinois Election Code comport with accepted notions of equal protection of the law?

■ In *Briscoe, supra,* the Court of Appeals noted that "[T]he gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action." (At page 1052). Thus, under the equal protection measure we must determine whether this requirement operates to discriminate against the plaintiff by depriving him of a right granted to candidates of established political parties.

The Illinois Election Code establishes a two step qualification for a candidate of a political party. A party candidate must first obtain the signatures of ½ of 1% of the registered members of the party in the appropriate election district. Next he must subject himself to a primary election. Plaintiff, on the other hand, must secure signatures of 5% of the total electorate of the appropriate election district. Indeed the requirements are different. But in a system where political primaries are an appropriate means of candidate nomination they rightfully should be different. A political party must receive 5% of the total vote in the next preceding election for any political office in order to run a primary election for candidates in a subsequent election. Thus, the state limits the availability of the ballot to political parties that have demonstrated a minimum of 5% of support from the total electorate. Admittedly the support measured is extended at a time prior to the election in which an independent runs. Further, it is recognized that the support requirement runs to the political party and not to an individual candidate of that party. However, the political primary will produce but one candidate from among the party's nominees and that one candidate will represent all party members in the subsequent election contest.

Thus, the state requires that a candidate for a political party achieve support

from the electorate similar to the support required for an independent. While the requirements admittedly are different they are sufficiently equal to meet the necessary standards of fairness implicit in the Due Process Clause and further these requirements do not operate to discriminate against an independent in a way violative of equal protection. While we recognize that different logistics are involved in an independent's attempt to run for office as compared with a member of a political party, nonetheless the party and the independent must receive equivalent electorate support. Thus, no substantial benefit is secured to the established parties by legislative action. Indeed, unlike the situation in Williams v. Rhodes, *supra*, it appears that all party candidates and independent candidates are placed on an equal footing.

■ Plaintiff Jackson also challenges § 10–6 of the Illinois Election Code. That provision requires that his petitions be filed 64 days prior to the date set for the election for the office he seeks. This regulation is clearly a necessary administrative requirement. No showing has been made that this requirement in any way operates to deny plaintiffs rights secured by the United States Constitution.

Thus, the court determines that the challenges to Sections 10–3, 10–4 and 10–6 of the Illinois Election Code, 46 Ill.Rev.Stat. § 10–3, § 10–4, and § 10–6 are without merit. The plaintiffs' motions for preliminary and permanent injunctive relief are denied and the cause is dismissed.

PELL, Circuit Judge (dissenting).

While I concur in the result reached in the particular case before us by the majority of the three-judge panel insofar as 46 Ill.Rev.Stat. §§ 10–4 and 10–6 are concerned, I respectfully dissent from that portion of the decision upholding the constitutionality of the Illinois statute requiring an independent candidate for public office to file nomination papers containing signatures of qualified voters of not less than 5% of the voters who voted at the next preceding general election in the political sub-division involved.

The fact that for the 1971 Chicago mayoralty election this would require some 58,000 signatures, while no doubt substantially chilling to the aspirations of any independent candidate, is not in my opinion the primary matter of inquiry.

The threshold difficulty lies, it appears to me, in the percentage requirement of the statute. 46 Ill.Rev.Stat. § 10–3. This could be as formidable and as discriminatory a barrier in the town as in the metropolis. It is, of course, for this reason that we have properly assumed three-judge panel jurisdiction.

The majority decision adverts to the fact that the 5% requirement is higher than the percentage (for third parties) required in a majority of other states. This is somewhat of an understatement as only 4 states require more than 3% and 42 states require 1% or less. Of these 42, 16 require 1/10 of 1% or less. *See* Williams v. Rhodes, 393 U.S. 23, 47, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). No doubt the fact that a state is so conspicuously out of step does not necessarily connote unconstitutionality but it does give cause for reflection as to whether there is a compelling state interest in the retention of the restrictive standard.

It is true that no evidentiary hearing has been held before the three-judge panel in the matter of proof by the primarily involved defendants[1] of compelling state interest, however, the majority was willing to find that such interest did exist on the basis of the record before us. I am unable to agree nor can I conceive that there is a real possibility of demonstration supporting a compelling state interest in adherence to the 5% restrictive requirement.

1. The City Clerk and the members of the Chicago Board of Election Commissioners.

During oral argument, attention to this phase was invited and a principal proposition advanced in response was the cost of including independent candidates on the ballot. While the cost of preventing dilution of fundamental liberties should be one rather willingly borne, as a practical matter Illinois permits, and is willing to assume the cost of, write-in candidates on its ballots, which would seem to have an equally costly potential to that of nominated independent candidates.

When a candidate of one of the two principal parties can cause his name to be placed on the primary ballot by slightly more than 2000 nominating signatures in Chicago, and the nominee of the other principal party by only slightly more than 4000, we must indeed search diligently for any rational justification for the exclusionary policy directed toward the independent candidate. I am unable to find such a justification either in the majority decision or otherwise.

There is certainly arguable merit in the proposition favoring the preservation of our two party system as opposed to the disruptive fragmentation of cohesive governmental processes resulting from numerous, but ineffectual, political parties. Nevertheless, the particular political parties have no vested constitutional interest in the preservation of their dominant status. *See* Williams v. Rhodes, *supra*, 393 U.S. at 32, 89 S.Ct. 5. If it were so, history shows us that neither would be in its present position.

While the state has, and should have, a substantial interest in administering its own local elections, including limitations on access to the ballot by candidates, due process requires that the state accomplish its legitimate objective both narrowly and fairly. Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970).

In my opinion, the requirement of the statute under consideration by its excessively high requirement becomes prohibitory as to some candidates and therefore meets neither the requirement of narrowness nor fairness.

In the words of Mr. Justice Cardozo, "The concept of fairness must not be strained till it is narrowed to a filament." Snyder v. Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674 (1934).

"The use of nominating petitions by independents to obtain a place on the Illinois ballot is an integral part of her elective system. * * * All procedures used by a State as an integral part of the election process must pass muster against the charges of discrimination or of abridgment of the right to vote." Moore v. Ogilvie, 394 U.S. 814, 818, 89 S.Ct. 1493, 1495, 23 L.Ed.2d 1 (1969).

Believing there is an on-the-face failure of "muster" qualification, I would therefore hold that § 10–3 is violative of the Equal Protection Clause of the fourteenth amendment and the right of free association guaranteed by the first amendment of the United States Constitution.

I am disturbed by the fact that holding a state statute federally unconstitutional may well leave no regulation extant in an area in which the state has an undoubted legitimate interest in regulating conduct such as in the case before us. Because of the result reached by the majority here, however, it is unnecessary to determine whether we could properly hold that § 10–3 was unconstitutional to the extent that its minimum requirement exceeds ½ of 1% of the voters at the last preceding election.