THOMAS S. FULLER, Petitioner-Appellant, v. STANLEY T. KUSPER, JR., Respondent-Appellee.

First District (2nd Division)   No. 86—0556

Opinion filed March 17, 1986.

Russell J. Stewart, of Park Ridge, for appellant.

Richard M. Daley, State's Attorney, of Chicago, and Odelson & Associates, Ltd., of Evergreen Park, (Gareth C. Leviton, Assistant State's Attorney, Burton S. Odelson, and Mark H. Sterk, of counsel), for appellee.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Petitioner Thomas S. Fuller (Fuller), a registered voter in the city of Chicago, Cook County, seeks to have his name placed on the March 18, 1986, Democratic Party primary ballot for the office of sheriff of Cook County. Section 7—10(c) of the Election Code provides that the petition for the nomination of a candidate for sheriff of Cook County must be signed "by at least one-half of one percent of the qualified electors of his party cast at the last preceding general election in his county." Ill. Rev. Stat. 1983, ch. 46, par. 7—10(c).

It is undisputed that 7,094 signatures are needed to meet this statutory requirement. Fuller is an elected commissioner of the metropolitan sanitary district, former Democratic committeeman of Evanston Township, served as Democratic committeeman of the 27th ward of Chicago, and is a qualified elector who signed his own petition for sheriff.

Fuller claims to have collected in excess of 12,000 signatures but chose to file 8,190. Bruce Hill, a qualified elector, filed an objection that resulted in the disqualification of 3,583 signatures. This left Fuller with only 4,607 valid signatures. Respondent Cook County officers electoral board (electoral board) upheld the results of the binder check and ruled that Fuller was not eligible to be certified for the

March 18, 1986, Democratic primary ballot.

On judicial review, the circuit court affirmed the order of the electoral board. Thereafter, on February 10, 1986, Fuller filed a verified complaint for an injunction and declaratory judgment in the United States District Court for the Northern District of Illinois, Eastern Division, Fuller v. Kusper, No. 86C0963. On February 27, 1986, Fuller's complaint was dismissed by Judge Leinenweber, who invoked the abstention doctrine. On March 4, 1986, Fuller filed his notice of appeal from the order of the circuit court. This expedited appeal followed.

I

On appeal, Fuller concedes that he did not challenge the propriety of the electoral board's disqualifying 3,583 signatures on his petition. Therefore, he did not meet the statutory minimum requirement of 7,094 signatures. However, he asserts that the underlying statute is unconstitutional in that: (1) his equal protection rights were abridged because the signature requirements necessary to become a candidate for sheriff of Cook County are greater than the signature requirements to become a candidate for judge of the circuit court of Cook County; and (2) the number of signatures required is so onerous that it abridges purported first amendment and due process guarantees.

A

■ *Lubin v. Panish* (1974), 415 U.S. 709, 39 L. Ed. 2d 702, 94 S. Ct. 1315, recognized the important State interest that is served by the establishment of certain criteria designed to limit access to the ballot to serious candidates. In *Anderson v. Celebrezze* (1983), 460 U.S. 780, 75 L. Ed. 2d 547, 103 S. Ct. 1564, the United States Supreme Court said:

"We have upheld generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself. The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names and frivolous candidates. [Citations.]" 460 U.S. 780, 788-89 n.9, 75 L. Ed. 2d 547, 557 n.9, 103 S. Ct. 1564, 1570 n.9.

Typically, an equal protection argument deals with access to the ballot for the same office (*Jackson v. Ogilvie* (N.D. Ill. 1971), 325 F. Supp. 864, 868-69, *aff'd* (1971), 403 U.S. 925, 29 L. Ed. 2d 705, 91 S. Ct. 2247), or where signature requirements for subdivision of a State are greater than requirements for statewide office (*Illinois State*

*Board of Elections v. Socialist Workers Party* (1979), 440 U.S. 173, 187, 59 L. Ed. 2d 230, 243, 99 S. Ct. 983, 991).

*Jackson* involved a challenge to different signature requirements to be placed on the ballot as a candidate in the general election for mayor of the city of Chicago. The independent candidate had a 5% minimum signature requirement (Ill. Rev. Stat. 1971, ch. 46, par. 10—3), while the candidate running in the party primary had a .5% minimum signature requirement (Ill. Rev. Stat. 1971, ch. 46, par. 7—10(d)). The court upheld the constitutionality of the different signature requirements even though both candidates were ultimately competing for the same elective office.

In this case, petitioner's equal protection argument is not even based on candidacies for the same elective office. Here, petitioner argues that simply because one type of candidate (judicial) has a low signature requirement, that all other candidates should be held to the same standard. This premise stretches equal protection precedents beyond their limits and completely ignores the legitimate State interests discussed in *Lubin* and the equal protection concepts discussed in *Jackson.*

In the case of judicial candidates, the obvious limitation is that any candidate must be a licensed attorney. (Ill. Const. 1970, art. VI, sec. 11.) Apparently, the General Assembly has considered this restriction to be sufficient to serve the legitimate State interest discussed in *Lubin.* The legislature did not impose any educational qualifications for sheriff. There are several public policy bases for treating candidates for judge and sheriff differently. The public has an interest in limiting the overpoliticization of judges. It is for this reason that, once elected, judges seek retention on an unopposed and nonpartisan basis. The public interest may not be well served by requiring judicial candidates to establish the extensive grass-roots political organization necessary to amass over 7,000 signatures. While only one sheriff is elected in Cook County, the number of judicial vacancies in any given election may also justify a distinction in signature requirements.

All of the candidates seeking the office of sheriff of Cook County are required to submit the same number of signatures. Fuller argues that the signature requirement should be based upon the results of the top vote-getters in the Democratic primary rather than the results of the top vote-getters in the general election. This argument cannot bolster petitioner's equal protection argument without a showing that the rules are applied differently to his candidacy than that of others similarly situated. Because there has been no such showing, the argument must fall.

Finally, the signature requirement for a candidate for sheriff of Cook County is no different from any countywide office other than judge. The candidate for president of the county board, county clerk, and others all face the same requirements as petitioner. Because neither Fuller, individually, nor candidates for sheriff of Cook County as a class are subject to special or suspect classifications or requirements, Fuller's equal protection rights are not violated by section 7—10(c) of the Election Code.

## B

Fuller claims that the signature requirement is so onerous that it abridges his first amendment and due process guarantees.

The legitimate State interests announced by the supreme court in *Lubin v. Panish* (1974), 415 U.S. 709, 39 L. Ed. 2d 702, 94 S. Ct. 1315, make it obvious that the minimum signature requirement for the office of sheriff of Cook County provides a constitutional means of measuring the seriousness of a candidate's desire and motivation for access to the ballot.

In the case of county officers, *inter alia*, the signature requirements are directly related to popular participation in the electoral process. As voter participation fluctuates, so too does the signature requirement and all aspirants are bound by the same obligation. Considering the massive number of registered voters available to the candidates, a requirement of one-half of one percent can hardly be fairly characterized as "onerous." In *Jenness v. Fortson* (1971), 403 U.S. 431, 29 L. Ed. 2d 554, 91 S. Ct. 1970, the supreme court deemed acceptable a Georgia requirement equal to 5% of the registered voters.

The facts of this case destroy the merits of any serious challenge Fuller might make with his "onerous" argument. The record reveals that he obtained in excess of 12,000 signatures and filed 8,190. Therefore, it was not "onerous" for him to collect more than the minimum statutory number. His difficulty was not with the number of signatures, but with their validity. He accepts, without objection, the disqualification of 3,583 signatures. The seriousness and motivation of his candidacy are thus constitutionally measured by the signature requirements of the statute.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and SCARIANO, JJ., concur.