242 So.2d 606 (1970)
Miriam Bordages GEIGER
v.
STATE of Louisiana, Through the DEPARTMENT OF INSTITUTIONS.
No. 8157.
Court of Appeal of Louisiana, First Circuit.
December 21, 1970.
James H. Hynes, Baton Rouge, for appellant.
Jack P. F. Gremillion and David L. French, Baton Rouge, for appellee.
Before LANDRY, ELLIS and BLANCHE, JJ.
*607 BLANCHE, Judge.
This is an appeal from a judgment sustaining a peremptory exception urging no cause of action filed in response to plaintiff's petition for damages. The pertinent allegations of plaintiff's petition are as follows:
"2.
"That on or about 11:00 a. m. on the 21st day of June, 1954 in the Parish of East Baton Rouge, your petitioner, Miriam Bordages Geiger, was the victim of a double attack of aggravated rape, which was forcibly inflicted on her without her consent by Carl Jackson and Wilbert Smith, both inmates, at the time, of the State Industrial School for Colored Youths, under the control, direction and supervision of the Louisiana Department of Institutions, located in the Parish of East Baton Rouge, State of Louisiana.
"3.
"That the perpetrators of the aggravated rape, Carl Jackson and Wilbert Smith, were assigned to a work detail on or near the grounds of the State Industrial School for Colored Youths in the Parish of East Baton Rouge, Louisiana, on the morning in question and through the negligence and lack of proper supervision by those placed in authority and in charge of the custody of said inmates, the two inmates, Carl Jackson and Wilbert Smith, left the work detail without being impeded in any way, and went to the house of Phillip Geiger, Jr., which was some five hundred yards from the place they were working, and robbed and forcibly raped your petitioner, Miriam Bordages Geiger.
"4.
"The negligence of the State of Louisiana, through its Department of Institutions, consisted in its failure to provide adequate supervision, custodial care and control of the inmates of the institution, the Industrial School for Colored Youths, and particularly the failure to provide adequate supervision, custodial care, control and restraint on the work detail to which Carl Jackson and Wilbert Smith were attached on the morning of June 21st, 1954.
"5.
"That the Department of Institutions of the State of Louisiana had been advised on September 28th, 1953, by the District Attorney of the Parish of East Baton Rouge that an inspection by the Grand Jury of East Baton Rouge Parish had revealed that twenty-seven (27) escapes were noted during the one hundred ten (110) days preceding September 20th, 1953, and that more stringent measures were necessary to prevent escapes to avoid a serious incident occurring.
"6.
"That, in spite of said warning, the authorities in charge of the State Industrial School for Colored Youths permitted the work detail to which Carl Jackson and Wilbert Smith were assigned on the morning of June 21st, 1954, to go out without sufficient supervision, control and restraint of the inmates on said detail.
"7.
"In the alternative, the person or persons placed in charge of the work detail on the morning of the 21st of June, 1954, from which Carl Jackson and Wilbert Smith escaped and left to rob and rape your petitioner, Miriam Bordages Geiger, were inattentive, negligent and careless in the performance of his or their duties.
"8.
"That Carl Jackson, one of the inmates of the State Industrial School for *608 Colored Youth, who raped your petitioner had a record of burglary and theft and had previously run away and escaped from said State Industrial School for Colored Youth the previous year and again the week previous to his acts complained of herein, and was the type of inmate from whom acts of the kind complained of herein could be expected, all of which was well known to, or should have been well known to the authorities in charge of his custody and control.
"9.
"That Wilbert Smith, one of the inmates of the State Industrial School for Colored Youth who raped your petitioner herein had a long record of theft, burglary and escape, and was the type of inmate from whom acts of the kind complained of herein could be expected; all of which was known to those in charge of his custody and control, or should have been well known to those in charge of his custody and control." (Record, pp. 2-4)
Defendant-exceptor averred in the peremptory exception of no cause of action that assuming arguendo the correctness of plaintiff's well-pleaded allegations of fact, the negligence of defendant and its employees, representatives, or personnel could not be as a matter of law the proximate cause of plaintiff's injuries and damages. The trial court accepted this contention of defendant-exceptor and sustained the peremptory exception. We reverse.
It is well established that an exception of no cause of action must be overruled unless the showing affirmatively establishes that under no evidence admissible under the pleadings would plaintiff have a cause of action; that is, unless the allegations show and exclude every reasonable hypothesis of facts other than those showing that the plaintiff cannot recover as a matter of law. Babineaux v. Southeastern Drilling Corporation, 170 So.2d 518 (La.App.3rd Cir. 1965), writ refused, 247 La. 613, 172 So.2d 700, appeal dismissed, Seacat Marine Drilling Co. v. Babineaux, 382 U.S. 16, 86 S.Ct. 67, 15 L.Ed.2d 12. The exception urging no cause of action should be overruled when the allegations of the petition, which must be construed most favorably for the plaintiff, disclose a cause of action, with all doubts being resolved in favor of the sufficiency of the petition, Thaxton v. Roberson, 224 So.2d 183 (La.App.3rd Cir. 1969); Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App.3rd Cir. 1967).
In light of the foregoing applicable principles, we are not prepared to say that as a matter of law the alleged negligence could in no way constitute a proximate cause of the injuries and damages plaintiff claims to have sustained so as to warrant maintenance of the peremptory exception urging no cause of action. In particular, we note that plaintiff alleges the two inmates escaped from the work detail, went to her home which was some five hundred yards from the place where they were working and robbed and forcibly raped her. We also note that plaintiff alleges numerous similar escapes prior to the incident in question, alleges that both of the alleged rapists had a long history of crime, alleges that one of the inmates had escaped on two previous occasions, the latest of which was just one week before the incident in question, and finally, alleges that each of the inmates was the type from whom acts of the kind complained of by the plaintiff could be expected, all of which was well known to or should have been well known to the authorities in charge of the custody and control of the two inmates.
Counsel for defendant-exceptor urges that the case of Green v. State of Louisiana, Through Department of Institutions, 91 So.2d 153 (La.App.1st Cir. 1956), certiorari denied, is controlling. In the Green case this Court affirmed a judgment sustaining an exception urging no cause of action, holding that as a matter of law even though State employees were negligent in *609 permitting a fifteen year old inmate of the State Industrial Home to escape, the State would not be liable for injuries sustained by persons who were struck by an automobile stolen by the inmate and negligently operated by him during his escape, because of remoteness of causal connection between the breach of the duty of the State employees to prevent escape and the injury to the plaintiffs. This Court pointed out that under the circumstances alleged therein the theft and negligent use of the automobile were so remote and separated in time and by intervening circumstances from the initial negligence which allegedly permitted the inmate to escape so as not to constitute the direct, efficient and proximate cause of plaintiff's injuries through the prisoner's subsequent negligent use of the stolen automobile.
Significantly, however, this Court distinguished the Green case from the case of Webb v. State of Louisiana, Through Department of Institutions, 91 So.2d 156 (La.App.1st Cir. 1956), handed down on the same date, in which case this Court affirmed a judgment holding the State liable for negligence of their employees in many respects, as a result of which a prisoner escaped from Louisiana State Penitentiary, obtained a gun from a prison guard and while still in the process of attempting to make good his escape without cause or provocation went into plaintiff's home and fired two shots wounding the plaintiff. The trial court in the Webb case concluded that the State's employees were guilty of negligence, which negligence was the proximate cause of plaintiff's injuries and damages. With regard to the crucial question of proximate cause, this Court quoted approvingly the following portion of the trial court's Reasons for Judgment:
"`The remaining question is whether or not there was a sufficient causal connection between the negligence and the injury. There seems to be little question but that there was.
"The loose security in failure to check Escobar [the escaped inmate] exposed the inhabitants of the community in the immediate proximity to Angola, including Virginia Webb, to just the type of injury she sustained. Were it not for the State's negligence this injury would not have happened. It is definitely foreseeable that convicts escaping through the negligence of the State would harm the people in the Angola area. This injury was directly within the risk area created by the negligence of the State and its employees.'" (91 So.2d at 161, 162)
The mere fact that the plaintiff was injured in the Webb case as a result of gunshot wounds inflicted by the escaping prisoner does not, in our opinion, support the contention that the negligence alleged in the instant case cannot as a matter of law constitute a proximate cause of the injuries and damages sustained by plaintiff in the case at bar. It is noted that in the Webb case this Court accepted the trial court's finding of fact that the escaping prisoner without cause went into plaintiff's home and fired the two shots.[1] It can certainly be argued, and plaintiff may be able to establish at a trial on the merits, that it was a foreseeable consequence of the alleged negligence of defendant and its personnel that the escaping inmates would attempt to perpetrate crimes against adjacent, unguarded residents such as plaintiff. Again, it is significant to note that plaintiff has alleged facts supporting such a contention, including the allegation that both of these inmates were the type from *610 whom such activity could reasonably be anticipated. (Petition, paragraphs 8, 9)
The case of Green v. State of Louisiana, Through Department of Institutions, cited supra, is distinguishable in view of the alleged intervening, independent negligent operation of a motor vehicle which was stolen by the inmate rather than perpetration of an intentional tort against adjacent residents by an escaping prisoner.
Whether or not the negligence of the State's prison or institution personnel constitutes a proximate cause of injuries and damages sustained by third persons as a result of actions by the escaping prisoner or inmate depends upon the facts of each particular case. Considering the allegations of plaintiff's petition and recognizing the doubts should be resolved in favor of a trial on the merits, we cannot say that as a matter of law the negligence with which the State and its personnel are charged could not constitute a proximate cause of plaintiff's injuries and alleged damages. The judgment of the trial court sustaining the peremptory exception of no cause of action, accordingly, is reversed and the case is remanded for further proceedings consistent herewith.
Reversed and remanded.
NOTES
[1] "The undisputed facts are that one Ricardo Escobar did on the evening of November 21, 1953, escape from Angola prison and fled unseen into the Tunica Hills woods. Escobar on the next morning around 10 o'clock came upon the home of the plaintiff, Virginia Webb, and her husband. There, while still in the process of attempting to make good his escape, Escobar without cause went into the Webb home and fired two shots from a revolver stolen from an Angola State employee." (91 So.2d at 157)