688 F.2d 1147
 John ADDEN, Administrator of the Estate of Kerry K. Adden,
Deceased, Plaintiff- Appellant,
v.
J. D. MIDDLEBROOKS, Superintendent of the Louisiana
Correctional and Industrial School, Unit of Department of
Corrections of the State of Louisiana, and C. Paul Phelps,
Director of the State of Louisiana Department of
Corrections, Defendants-Appellees.
 No. 79-1810.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 9, 1982.
Decided Sept. 15, 1982.
Rehearing and Rehearing En Banc Denied Jan. 4, 1983.
 
 Gregory E. Barrett, Rockford, Ill., for plaintiff-appellant.
 William Sullivan, Asst. Atty. Gen., Louisiana Dept. of Justice, Baton Rouge, La., for defendants-appellants.
 Before PELL, WOOD, and CUDAHY, Circuit Judges.
 PELL, Circuit Judge.
 
 
 1
 The plaintiff appeals from the district court's dismissal of his suit seeking damages for the wrongful death of Kerry K. Adden. We address two principal issues on appeal. The first is whether the real defendant of this suit is the State of Louisiana. If it is, the court lacked subject matter jurisdiction over the controversy and, further, the Eleventh Amendment to the Constitution barred the suit. The second issue is whether the district court had personal jurisdiction over the defendants.
 
 I.
 
 2
 On April 8, 1976, Walter Lee Cook and Ronnie J. Tucker escaped from a work crew of inmates assigned to the Louisiana Correctional and Industrial School (LCIS). The LCIS is a unit of the State of Louisiana Department of Corrections (Department of Corrections or Department) at DeQuincy, Louisiana. Actions taken to apprehend the two inmates were unsuccessful. On May 24, 1976, in Rockford, Illinois, Cook and Tucker allegedly caused the death of Kerry K. Adden.
 
 
 3
 John Adden, the administrator of Kerry Adden's estate, subsequently filed a complaint in the United States District Court for the Northern District of Illinois. J. D. Middlebrooks, Superintendent of LCIS, and C. Paul Phelps, Director of the Department of Corrections, were named as defendants. Jurisdiction was based on diversity of citizenship. The complaint alleged that the defendants were negligent in permitting the two prisoners to escape. The defendants filed a motion to dismiss, claiming that the court lacked both personal and subject matter jurisdiction and that the suit was barred by the Eleventh Amendment to the United States Constitution. The case was assigned to a magistrate who recommended that the motion be granted, relying on the ground of sovereign immunity. The magistrate addressed the question of subject matter jurisdiction implicitly but did not reach the issue of personal jurisdiction. The district judge adopted the report and recommendation of the magistrate.
 
 II.
 
 4
 For purposes of this appeal, we will assume without so deciding that Louisiana law governs this controversy and that Adden's complaint states a cause of action pursuant thereto. Both parties have indicated in their supplemental briefs before this court that they believe Louisiana law is applicable. They differ, not surprisingly, over whether the plaintiff has stated a cause of action. The appellees claim that, as a matter of law, proximate cause cannot be proven on the facts stated by Adden. See, e.g., Frank v. Pitre, 353 So.2d 1293 (La.1977). We need not address these questions, however, because we find the jurisdictional issues dispositive.III.
 
 
 5
 The issues of the Eleventh Amendment bar and subject matter jurisdiction are closely related in this case. The plaintiff invoked the subject matter jurisdiction of the district court pursuant to the diversity statute, 28 U.S.C. § 1332 (1976). That statute provides, in pertinent part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000 ... and is between ... citizens of different states." For diversity jurisdiction to exist, the defendant(s) must fall within the definition of "citizen." States are not "citizens" within the meaning of section 1332 and, therefore, are not within the reach of the diversity statute. State Highway Commission v. Utah Construction Co., 278 U.S. 194, 200, 49 S.Ct. 104, 106, 73 L.Ed. 262 (1929). In determining whether diversity jurisdiction exists, the court is not bound by the status of the named defendant but must inquire as to who is the real party in interest. See id. at 199-200, 49 S.Ct. at 105-106. If the State of Louisiana is determined to be the real defendant in this suit, the cause must be dismissed for lack of subject matter jurisdiction.
 
 
 6
 The Eleventh Amendment of the United States Constitution similarly limits the jurisdiction of the federal courts by providing that "(t)he judicial power of the United States shall not be construed to extend to any suit, in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." If the named defendant in a suit is other than the State itself, the test of the Eleventh Amendment's applicability is whether the state is the " 'real, substantial party in interest.' " Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 669 (1974) (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)).
 
 
 7
 Whether we frame our analysis in terms of the applicability of the Eleventh Amendment or of the existence of diversity jurisdiction, we must determine who is the real party in interest. This determination is to be made by reference to the essential nature and effect of the proceedings. Ex parte New York, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921). We also bear in mind that "(t)here is never a presumption in favor of federal jurisdiction, but rather the basis for such jurisdiction must be affirmatively evidenced by the party invoking it." Johnson v. Texas Department of Corrections, 373 F.Supp. 1108, 1109 (S.D.Tex.1974) (citing Grace v. American Central Insurance Co., 109 U.S. 278, 73 S.Ct. 207, 27 L.Ed. 932 (1883)).
 
 
 8
 The appellant poses two arguments why the State of Louisiana is not, contrary to the finding of the district court, the true defendant in the instant suit. First, Adden urges that the liability alleged is individual in nature even though the State might also be subject to liability through the doctrine of respondeat superior. Second, Adden maintains that, even if his action is viewed as one against the Department of Corrections, the Department is not the "very equivalent of the government of the State of Louisiana."
 
 
 9
 A. Individual Liability of Middlebrooks and Phelps
 
 
 10
 At the outset, we must recognize that the present case is distinguishable from Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), in which the Supreme Court held that the Eleventh Amendment did not necessarily bar a claim that named as defendants the Governor of Ohio, the Adjutant General of the Ohio National Guard, various other Guard officers and enlisted members, and the President of Kent State University. The Scheuer Court stated that "damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." Id. at 238, 94 S.Ct. at 1687 (citations omitted). The critical distinction between Scheuer and the case before this court is that Scheuer involved allegations of unconstitutional activity whereas the present case does not. As the Scheuer Court noted, the Supreme Court established in 1908 that:(W)hen a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.
 
 
 11
 416 U.S. at 237, 94 S.Ct. at 1686 (quoting Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 453-54, 52 L.Ed. 714 (1908)) (emphasis supplied by Scheuer Court). Because there are no claims of unconstitutional conduct on the part of the named defendants, they are not necessarily " 'stripped of (their) official or representative character,' " 416 U.S. at 237, 94 S.Ct. at 1686 (quoting 209 U.S. at 159-60, 28 S.Ct. at 453-54).
 
 
 12
 Two cases on which Adden relies, Geiger v. State, 242 So.2d 606 (La.App.1970), and Webb v. State, 91 So.2d 156 (La.App.1956), do not address, let alone resolve, the legal question before this court. In both Webb and Geiger, the plaintiffs sued the "State of Louisiana through (the) Department of Institutions" claiming damages for injuries sustained at the hand of escaped convicts. No prison officer was individually named as a defendant in either suit. These two cases support only the proposition that Adden might have brought his suit in a state court in Louisiana, naming the state as defendant.
 
 
 13
 Similarly, Payton v. United States, 679 F.2d 475 (Former 5th Cir. July 1, 1982) (en banc), is inapposite. Although that suit involved allegations of negligence by the United States Board of Parole and the United States Board of Prisons, the United States was the named defendant. The principal issue in the case was whether the challenged conduct was within the "discretionary function" exception to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, 2680(a) (1982).
 
 
 14
 Frank v. Pitre, 353 So.2d 1293 (La.1977), is also not dispositive. In that case, a policeman sought damages from a parish sheriff for injuries sustained at the hand of a prisoner who had been permitted to leave prison on a pass. The majority held that the appellate court order awarding damages must be reversed because the plaintiff had failed to establish that the prisoner's release was the proximate cause of the injury. Id. at 1295-96. The Frank court did not discuss directly whether it viewed the action as one against the defendant sheriff individually. The court did cite, however, Cappel v. Pierson, 15 La.App. 524, 132 So. 391 (1931), in which the Louisiana appellate court had affirmed a judgment in favor of the defendant in part on the ground that his "good faith execution of his quasi-judicial discretionary authority could not be questioned in a civil damage suit." 353 So.2d at 1295. Because Cappel involved the superintendent of a state insane asylum rather than a prison official, it is not directly analogous to the case at bar. Although we do not think that Frank-or Cappel-resolves the issue before this court, we do find that Frank is entirely consistent with the result we reach.
 
 
 15
 Adden also relies on Semler v. Psychiatric Institute, 538 F.2d 121 (4th Cir. 1976), cert. denied, 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 90. Semler was an action to recover damages from the Psychiatric Institute of Washington, D.C. and a physician who practiced there for negligently releasing from day-care status a probationer named Gilreath. While an outpatient at the Institute, Gilreath killed Semler's daughter. The named defendants filed a third-party complaint against Paul Folliard, Gilreath's probation officer.
 
 
 16
 The state court had suspended Gilreath's twenty-year prison sentence on an abduction charge, conditioned on his confinement and treatment at the Institute, which was located in Virginia. In the course of the next year, the trial judge approved various passes for Gilreath, as well as a request that he be transferred to day-care status. Gilreath decided that he wanted to work in Ohio. Folliard granted him passes, without the approval of the state judge, so that he might seek employment there. Thinkingerroneously-that Ohio probation authorities would accept Gilreath's transfer application, the Institute physician treating Gilreath discharged the probationer and so informed Folliard.
 
 
 17
 When Folliard found that Ohio would not accept the transfer application, he ordered Gilreath to return to Virginia. Gilreath did so. He visited his physician who accorded him outpatient status. Folliard was advised of these events but the state judge was never consulted. Gilreath killed the plaintiff's daughter approximately a month after his return to Virginia.
 
 
 18
 The Semler case is relevant to Adden's claim insofar as Folliard was required to contribute personally one-half of the twenty-five thousand dollar judgment awarded the plaintiff. The Fourth Circuit upheld the district judge's finding that the appellants had breached the duty imposed on them by Gilreath's probation order. The court also held that Folliard had been performing a ministerial, rather than a discretionary, act when he failed to obtain the state court's approval for the various changes in Gilreath's status, stating: "The district court properly ruled that this act was ministerial. It simply involved the officer's obedience to the mandate of the court order." 538 F.2d at 127. Because Folliard was performing a ministerial act, he was not entitled to immunity.
 
 
 19
 The distinction recognized by the Semler court between "ministerial" and "discretionary" acts has long been deemed relevant to whether a public officer is subject to liability as an individual. See, e.g., Lawhorne v. Harlan, 214 Va. 405, 200 S.E.2d 569 (1973); Huckabay v. Netterville, 263 So.2d 113 (La.App.1972); DiVincenti Brothers v. Livingston Parish School Board, 355 So.2d 1 (La.App.1977), cert. denied, 357 So.2d 558 (1978); 43 Am.Jur. Public Officers §§ 278, 279, at 90-93 (1942). The well settled rule is that a public officer is not individually liable for performance of a discretionary act but may be liable for non-feasance of a ministerial act. Id. §§ 278, 279, at 90-95. A ministerial act has been defined as "one in which a person performs in a given statement of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of his own judgment upon the propriety of acts being done." Frame v. Yenni, 347 So.2d 309, 311 (La.App.1977) (quoting Lemoine v. Ducote, 45 La.Ann. 857, 12 So. 939 (1893)).
 
 
 20
 The Semler court's conclusion that Folliard's failure to obtain court approval of changes in Gilreath's status was non-feasance of a ministerial duty is entirely consistent with the above-quoted definition. The action required of Folliard by the court's order demanded no exercise of judgment or discretion.
 
 
 21
 Although the analysis in Semler is relevant to the case at bar, we do not think that Semler supports the result urged by Adden. Louisiana statutory law makes the "Department of Corrections through its officers and offices," La.Rev.Stat.Ann. § 36:151(B), responsible for the custody of criminal offenders. Although imposition of the duty is clear, the manner in which the Department of Corrections-through its officers-is to meet the statutory obligation is not defined in such a way that it can be met without the exercise of judgment by the Department and its employees. We do not think that those officials charged with maintaining the confinement of convicted criminals are engaged in "ministerial" acts; therefore, the defendants are not subject to individual liability in the instant case.[1]B. Department of Corrections as Alter-Ego of the State
 
 
 22
 There remains the question whether LCIS and the Department are alter-egos of the State of Louisiana. If they are, the State is the real party in interest and subject matter jurisdiction is lacking. State Highway Commission v. Utah Construction Co., 278 U.S. 194, 200, 49 S.Ct. 104, 106, 73 L.Ed. 262 (1929). It is appropriate for a federal court to consider state law as a factor in determining whether the State is the real party in interest, see Johnson v. Texas Department of Corrections, 373 F.Supp. 1108, 1109-10 (S.D.Tex.1974). In the instant case, however, research has disclosed no case in which the courts of Louisiana have discussed whether an action against the Louisiana Department of Corrections is in reality an action against the State.
 
 
 23
 The district court stated that two tests have traditionally been used to determine whether an agency is the alter-ego of the State. The first turns on whether the agency is performing a normal governmental function. Johnson, 373 F.Supp. at 1109. Although we think the maintenance of custody over inmates is a "normal" governmental function, we recognize that the Johnson court relied almost exclusively on decisions of the Texas courts as to the status of the Texas Department of Corrections. See id. We therefore cannot rest our conclusion solely on the Johnson rule.
 
 
 24
 The second test relied upon by the district court is whether any judgment against the agency would have to be paid out of the State treasury. Miller-Davis Co. v. Illinois State Toll Highway Authority, 567 F.2d 323 (7th Cir. 1977). In Miller-Davis, the state's financial liability was certain because of a statutory provision. Id. (citing Ill.Rev.Stat. ch. 121, § 100-24 (1975)). In the instant case, no similar statutory provision appears to exist and the record below is not clear as to whether the State of Louisiana would be required to meet any judgment awarded. Although we think that the Miller-Davis test is an excellent basis for determining the identity of the real party in interest, it is not dispositive in the instant case.
 
 
 25
 Our inquiry must be guided, therefore, by a number of factors considered by other courts to be relevant in determining whether the State itself is the real party in interest. These include whether the agency may sue and be sued in its own name, whether any legislative provision stating that the agency performs an essential governmental function exists, whether the agency has power to buy and/or sell property in its own name, and whether the agency is accorded independent status under state law. See generally DeLong Corp. v. Oregon State Highway Commission, 233 F.Supp. 7 (D.Or.1964), aff'd, 343 F.2d 911 (9th Cir. 1965), cert. denied, 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119; 6 A.L.R. Fed. 655 (1971 and Cum.Supp.1981).
 
 
 26
 Section 15:821 of the Louisiana Revised Statutes provides, in pertinent part: "The functions of the department shall comprise administrative functions of the state now or hereafter authorized by law to be exercised in relation to the administration, management and operation of all State institutions for the care, custody and correction of persons sentenced for felonies or misdemeanors." La.Rev.Stat.Ann. § 15:821 (West) (emphasis added). We read this provision as stating the legislators' view that the Department performs an essential governmental function. Cf. Florida State Turnpike Authority v. Van Kirk, 146 F.Supp. 364 (S.D.Fla.1956) (holding analogous statement to be indication Turnpike Authority was alter-ego of the State).
 
 
 27
 Section 834 of Title 15 of the Louisiana statutes governs land under the control of the Department. That section provides:
 
 
 28
 The director of corrections shall have power and authority, with the approval of the Board of Corrections, to lease (but not for oil, gas or other minerals) any of the lands owned by the state and under the control of the department which is not being used .... The director shall have the right to grant rights of way across state owned lands under its jurisdiction for the purpose of laying pipe lines, gas lines, water lines and transmission of electricity .... The director shall also have the authority, with the approval of the Board of Corrections and the governor, to buy lands needed for the proper use of any institution under the jurisdiction of the department; and also to sell and transfer to any other state agency real property belonging to the state and under the jurisdiction of the department.
 
 
 29
 La.Rev.Stat.Ann. § 15:834 (West) (emphasis added). This section indicates that the Department's control over land under its jurisdiction can be exercised only with the approval of the Board of Corrections and, if land is to be bought or sold, of the Governor. Further, it clarifies that the land under the jurisdiction of the Department is owned by the State.
 
 
 30
 On the whole, we believe that sections 15:821 and 15:834 support the appellees' contention that the Department of Corrections performs a normal governmental function and, therefore, the State of Louisiana is the real defendant in this suit.[2]
 
 
 31
 The appellant has relied almost exclusively on a line of cases holding that the Louisiana Highway Commission is not the alter-ego of the State. See, e.g., Farnsworth v. Louisiana Highway Commission, 8 F.Supp. 11 (D.La.1934), aff'd, 74 F.2d 910 (5th Cir. 1935), cert. denied, 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259. We note that in a recent case, Dagnall v. Gegenheimer, 645 F.2d 2, 3 (5th Cir. 1981), the Fifth Circuit stated that the plaintiff "does not dispute the Department (of Highways)'s claim that it is a state agency entitled to invoke eleventh amendment limitation on the judicial power of the United States." Whatever the status of the Department of Highways, we do not find it relevant to whether the Department of Corrections is the alter-ego of the State of Louisiana. To conclude otherwise would be inconsistent with the Supreme Court's prescription in Ex parte New York, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921), that the determination as to who is the real party in interest must turn on the essential nature of the particular proceeding in which the issue arises.
 
 
 32
 Finally, Adden has cited no federal case involving a tort suit against officials of a state Department of Corrections that was found permissible under the Eleventh Amendment. This reinforces our conclusion that the function of such a department is to perform what is essentially a governmental function. We conclude, therefore, that the Department of Corrections is the alter-ego of the State of Louisiana.
 
 
 33
 Because we believe the State of Louisiana is the real defendant in the instant suit, we find that the district court could not exercise diversity jurisdiction over the action; further, the suit was barred from federal court by the Eleventh Amendment.
 
 IV.
 
 34
 Even if, contrary to our conclusion in Section III(A), supra, this case could be characterized as one in which the named defendants were subject to liability as individuals, we find that the district court was correct in dismissing the cause because the court lacked personal jurisdiction over the defendants.
 
 
 35
 A. Statutory and Constitutional Requirements for Personal Jurisdiction
 
 
 36
 The power of a federal court entertaining a case based on diversity of citizenship to exercise personal jurisdiction over non-resident defendants turns on two independent considerations: (1) whether an applicable state rule or statute potentially confers in personam jurisdiction over the defendants and, if it does, (2) whether assertion of such jurisdiction is commensurate with due process. See, e.g., McBreen v. Beech Aircraft Corp., 543 F.2d 26, 28 (7th Cir. 1976).
 
 
 37
 The Illinois "long-arm" statute, Ill.Rev.Stat. ch. 110, P 2-209(a)(2) (1981), confers personal jurisdiction over:
 
 
 38
 (a) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
 
 
 39
 (2) The commission of a tortious act within this State....
 
 
 40
 The Illinois Supreme Court has held that a tort is considered to be committed in the place where the injury occurs. Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). The court has also held that the statute is intended to extend jurisdiction over nonresidents to the extent permitted by due process. Nelson v. Miller, 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957).
 
 
 41
 Because Kerry Adden's death occurred in Illinois, the tortious act of which the plaintiff complains occurred within that State.[3] We conclude that this case falls within the reach of the Illinois statutory provision governing the exercise of in personam jurisdiction. We turn therefore to the question whether the exercise of such personal jurisdiction comports with due process.
 
 
 42
 The seminal case regarding due process limitations on personal jurisdiction is International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The International Shoe Court held that a state court may exercise in personam jurisdiction over an out-of-state defendant only if the defendant has "sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which appellant has incurred there." Id. at 320, 66 S.Ct. at 160.
 
 
 43
 Application of the "sufficient contacts" test enunciated in International Shoe was recently addressed by the Supreme Court in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Woodson Court applied a two-prong analysis to determine whether the constitutionally necessary contacts existed between the defendant and the forum state. Pursuant to this analysis, one must first evaluate the reasonableness and fairness of requiring a defendant to litigate in a possibly distant and inconvenient forum. The Court stated that:
 
 
 44
 Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute ...; the plaintiff's interest in obtaining convenient and effective relief ..., at least when that interest is not adequately protected by the defendant's power to choose the forum ...; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies ....
 
 
 45
 Id. at 292, 100 S.Ct. at 564 (citations omitted). Applying these factors to the instant case, we think that Adden's claim that personal jurisdiction may be constitutionally asserted in the present case is weak. As Webb v. State, 91 So.2d 156 (La.App.1956), and Geiger v. State, 242 So.2d 606 (La.App.1970), make clear, Louisiana courts recognize a cause of action against the State for injurious acts committed by escaped prisoners. The principal legal hurdle to a plaintiff's case alleging such a cause of action in the Louisiana courts is proof of proximate cause. See, e.g., Green v. State, 91 So.2d 153 (La.App.1956).
 
 
 46
 Although we do not decide the question of proximate cause in the instant case, Adden would have to demonstrate such a causal link if his suit were to survive a motion to dismiss. There is no sense, therefore, in which Adden's suit stood a more certain chance of success in a federal court than it would have in a Louisiana court. Second, by bringing this suit in federal court, Adden has raised the issues of the Eleventh Amendment bar and the power of the court to exercise diversity jurisdiction. These would not have been issues in the case had the suit been brought in Louisiana. We find it difficult to see therefore how Adden's choice of forum has contributed to "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," 444 U.S. at 292, 100 S.Ct. at 564.
 
 
 47
 Even if we found, however, that it was "reasonable" to require Middlebrooks and Phelps to litigate this suit in a federal court in Illinois, the second prong of the Woodson test would prohibit the suit. This prong requires the presence of sufficient affiliating circumstances to empower the forum state to assert jurisdiction over nonresident defendants. The circumstances that will satisfy this aspect of the Woodson test must indicate that the defendants " 'purposefully avail(ed themselves) of the privilege of conducting activities within the forum State,' " id. (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)), and be such that the defendants "should reasonably anticipate being haled into court there," id.
 
 
 48
 Middlebrooks and Phelps did not purposefully conduct any activities within Illinois nor could they reasonably anticipate being forced to defend a negligence suit there. An escaped prisoner might flee to virtually any state and commit a tortious act there. This is especially true when six weeks have elapsed between the time of escape and the commission of the tort. The fact that apparently one of the two escapees in this case was originally from Illinois does not alter this analysis. If it did, we would be concluding that Department of Corrections officials should expect to be sued in any state which was at some point the "home" of a person incarcerated in Louisiana.
 
 
 49
 The Woodson Court interpreted the Due Process clause as giving a "degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Id. We find no way in which the defendant officials could have "structured their ... conduct" so as to predict that they might be liable for the actions of Cook and Tucker. We necessarily conclude, therefore, that the court below could not exercise in personam jurisdiction over the individual defendants.
 
 B. Waiver of Personal Jurisdiction
 
 50
 Adden claims that, even if personal jurisdiction were lacking in the instant case, the defendants waived that defense. The defendants challenged the personal jurisdiction of the court, as well as raising the issues of the Eleventh Amendment bar and subject matter jurisdiction, in their motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. Because the district court found the action barred by the Eleventh Amendment, the opinion below did not discuss the question of personal jurisdiction. The appellant addressed only the Eleventh Amendment grounds and, by implication, the question whether diversity jurisdiction existed, in his original brief before this court. The defendants-appellees responded to these arguments but did not brief the personal jurisdiction question. Because that issue appeared critical to this court, supplemental briefing was ordered on the issue of personal jurisdiction.
 
 
 51
 First, we find that the appellees did not waive their objection to personal jurisdiction pursuant to Rule 12(h), Fed.R.Civ.P. That rule provides that a defense of lack of jurisdiction over the person is waived if it is omitted from a motion raising other grounds for dismissal pursuant to Rule 12 or if it is neither raised by motion nor included in a responsive pleading or an amendment thereof. The defendants did raise the question of personal jurisdiction in their Rule 12 motion and therefore no waiver exists under the requirements of Rule 12(h).
 
 
 52
 The appellant also relies on Shuford v. Anderson, 352 F.2d 755 (10th Cir. 1965), cert. denied, 383 U.S. 935 (1966), in support of his argument that any objection to personal jurisdiction was waived. In Shuford, the appellee had moved the trial court to dismiss the plaintiff's claim on grounds pertaining to the inadequacy of service and improper venue. The district court ordered the dismissal, relying solely on the venue issue. The briefs before the Tenth Circuit primarily argued the venue question; in fact, Anderson "hardly more than mentioned (the service of process) point in his ... brief without any supporting argument either in the brief or orally," id. at 765. After the Tenth Circuit had reversed the district court's order and remanded the case for further proceedings, Anderson petitioned for rehearing. He maintained that the judgment of the district court should have been sustained on the grounds raised in his original motion pertaining to the adequacy of service. The Tenth Circuit stated that Anderson "could be deemed to have waived," id., the service of process issue and went on to note that because the case had been remanded "the trial court (could) consider whether previous service of process upon Anderson was irregular or adequate ...." Id.
 
 
 53
 The Shuford court did not hold that the service of process issue had been waived. The reference to waiver was mere dicta in light of the Tenth Circuit's observation that the district court could consider the issue on remand. Second, the posture of the two cases is clearly distinguishable. Anderson was petitioning for a rehearing which the court denied. In the interest of judicial economy, rehearings are not favored. Fed.R.App.P. 35(a). Further, at the time the Shuford panel considered and decided the appeal, it did not have the benefit of the parties' views on the service of process issue. By contrast, the personal jurisdiction question was addressed by both Adden and the appellees in their Supplemental Briefs, submitted pursuant to order of this court. The issue also received considerable attention by both parties at oral argument. This court has before it the parties' contentions as to the legal principles governing this issue on which there is no disputed question of fact. This court is therefore competent to decide the issue.
 
 
 54
 We do not hold that this court was required to consider an issue that received no attention by the district court and only passing reference in the briefs originally filed before this court. Appellees are well advised to brief fully all grounds supportive of a ruling below in their favor. The fact that this court is not required to address the question of personal jurisdiction does not mean, however, that it is powerless to do so. We think the issue is an important one, worthy of attention by the court. We conclude therefore that the question of personal jurisdiction was not waived by the appellees.
 
 V.
 
 55
 Although there is no Louisiana case directly on point, we believe that the statutes creating the Louisiana Department of Corrections compel the conclusion that the State is the real party in interest in this suit. The court below therefore lacked the power to exercise subject matter jurisdiction over the controversy; further, the suit was barred by the Eleventh Amendment.
 
 
 56
 Even if the individuals-rather than the Department or the State-were the real defendants, the district court could not exercise personal jurisdiction over the defendants consistent with due process. We find that the particular circumstances of this case do not compel the conclusion that the question of in personam jurisdiction was waived by the appellees. Bearing in mind that a court of appeals may affirm the order of a district court on any ground that finds support in the record, Helvering v. Gowran, 302 U.S. 238, 245-46, 58 S.Ct. 154, 157-56, 82 L.Ed. 224 (1937); Miller v. Gateway Transportation Co., 616 F.2d 272, 275 n.7 (7th Cir. 1980), we conclude that the instant suit was subject to dismissal by the court below for want of personal jurisdiction.
 
 
 57
 Having considered all the arguments urged by the appellant, the judgment of the district court dismissing Adden's cause is accordingly
 
 
 58
 Affirmed.
 
 
 59
 CUDAHY, Circuit Judge, concurring in part and dissenting in part.
 
 
 60
 I agree with the majority that plaintiff's suit against the Louisiana Department of Corrections is barred under the eleventh amendment since the Department is clearly an alter ego of the state. I part company with the majority, however, on the question whether the plaintiff may proceed, as he has in fact proceeded, against Middlebrooks and Phelps in their individual capacities and whether we have jurisdiction over the persons of these defendants.
 
 I.
 
 61
 It is not clear whether the majority concludes that plaintiff's suit against Middlebrooks and Phelps is barred by the eleventh amendment. Although it does not expressly hold that Middlebrooks and Phelps are immune from the instant suit under the eleventh amendment, the majority attempts to distinguish the case before us from Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), a decision denying eleventh amendment immunity to individual public officials in a case similar to the case at bar. In any event, the majority explicitly concludes that this suit must be dismissed as to these defendants in their individual capacity because plaintiff's claims involve "discretionary" acts for which the defendants, as public officers, are apparently immune from tort liability under Louisiana law. In my view, the principles articulated by Chief Justice Burger in Scheuer, which the majority either ignores or attempts to distinguish, are quite relevant here. An analysis of Scheuer reveals that these defendants are not entitled to immunity under the eleventh amendment and that plaintiff's complaint against the defendants as individuals should not be dismissed at this stage of the litigation.
 
 
 62
 Plaintiffs in Scheuer brought suit against the Governor of Ohio and other Ohio officials claiming that the defendants violated their constitutional rights during the 1970 riots at Kent State University. The district court dismissed the suit on the grounds that the defendants were immune under the eleventh amendment. Writing for a unanimous Court, Chief Justice Burger concluded that the district court erred in dismissing the action at the pleadings stage when the complaint alleged that the defendants in their individual actions violated the plaintiffs' civil rights. The majority here seems to interpret the opinion as turning on the fact that the Scheuer plaintiffs raised constitutionally based claims, while the case before us is for common law negligence. Although Scheuer may be distinguished on the basis proposed by the majority, this has no bearing on the important principles articulated in Scheuer which the majority ignores.
 
 
 63
 Scheuer basically held that plaintiffs' complaints were not barred by the eleventh amendment because they sought to recover from the defendants individually for their personal actions which allegedly deprived plaintiffs of civil rights. In this respect, the Supreme Court admonished the district court for dismissing the complaints without taking evidence when the complaints, "(f)airly read, ... allege that each of the named defendants ... acted either outside the scope of his respective office or, if within the scope, acted in an arbitrary manner ...." 416 U.S. at 235, 94 S.Ct. at 1686. The Court then reiterated the time-tested standards for assessing the sufficiency of a complaint:
 
 
 64
 When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.
 
 
 65
 Analyzing the complaints in light of these precedents, we see that petitioners allege facts that demonstrate they are seeking to impose individual and personal liability on the named defendants for what they claim-but have not yet established by proof-was a deprivation of federal rights by these defendants under color of state law. Whatever the plaintiffs may or may not be able to establish as to the merits of their allegations, their claims, as stated in the complaints, given the favorable reading required by the Federal Rules of Civil Procedure, are not barred by the Eleventh Amendment. Consequently, the District Court erred in dismissing the complaints for lack of jurisdiction.
 
 
 66
 416 U.S. at 236, 238, 94 S.Ct. at 1686, 1687 (emphasis in original). Plaintiff's complaint here, like the complaint in Scheuer, "seek(s) to impose individual and personal liability on the named defendants." 416 U.S. at 238, 94 S.Ct. at 1687 (emphasis in original). The complaint alleges that
 
 
 67
 (o)n or about April 8, 1976, Defendants wrongfully permitted these prisoners to leave their custody. They further failed to undertake reasonable measures to recapture said prisoners and retake them into custody. They further failed to provide reasonable warning and notice that said prisoners were at large.
 
 
 68
 Thus, if the majority has concluded that plaintiff's complaint against Middlebrooks and Phelps is barred by the eleventh amendment, it has ignored Scheuer. Most importantly, the absence of constitutional elements from the complaint is not relevant where the defendants are sued as individuals. For the eleventh amendment bar has nothing to do with the constitutional nature of the claim; rather, eleventh amendment analysis goes only to the question whether the defendants can be, and in fact were, sued individually. See Whitner v. Davis, 410 F.2d 24, 29 (9th Cir. 1969) ("The Eleventh Amendment immunizes a state from suit in a federal court by a citizen of that state, and this immunity is not affected by the fact that the case may be one arising under the Constitution and laws of the United States.")
 
 
 69
 Scheuer also tells us whether this suit is barred under the common law rule that public officers are not liable in tort for harm caused by their discretionary acts. Here the majority, with nothing before it but generalized pleadings, is satisfied that Middlebrooks and Phelps performed only discretionary acts when they negligently allowed Walter Lee Cook and Ronnie J. Tucker to escape from their custody. But a federal court reviewing the sufficiency of a complaint must construe "the allegations of the complaint ... favorably to the pleader." 416 U.S. at 236, 94 S.Ct. at 1686. Moreover, the issue before us "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. Here the majority has prematurely concluded that "(w)e do not think that those officials charged with maintaining the confinement of convicted criminals are engaged in 'ministerial' acts; therefore, the defendants are not subject to individual liability in the instant case." Ante at 10. In its haste to close the federal courthouse door, the majority has decided this case, ostensibly on the complaint, but really on the merits-and without any showing of the evidence.[1] I believe that plaintiff is at least entitled, on the face of the complaint, to conduct discovery to develop facts showing that the defendants' conduct was ministerial in nature. If the facts are not there, summary judgment is always available.
 
 II.
 
 70
 As an alternative holding, the majority concludes that the district court properly dismissed this case because of a lack of personal jurisdiction over Middlebrooks and Phelps. I agree that defendants did not waive their objections to personal jurisdiction, but I cannot accept the conclusion that to exercise personal jurisdiction over Middlebrooks and Phelps would be inconsistent with the requirements of due process.
 
 
 71
 Although purporting to analyze this case using the factors enunciated in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the majority either ignores or misapplies the factors provided by that case. The majority first concludes that plaintiff's suit did not stand "a more certain chance of success in a federal court than it would have in a Louisiana court." Ante at 17. But the relevancy of this surmise under Woodson escapes me. Woodson instead requires this court to focus on "the forum State's interest in adjudicating the dispute ...(,) the plaintiff's interest in obtaining convenient and effective relief," and the interests of the "interstate judicial system." 444 U.S. at 292, 100 S.Ct. at 564. As to convenience and forum state interest, the majority ignores the interest of Illinois in securing adequate compensation from tortfeasors who negligently cause the death of an Illinois citizen. Nor does the majority mention the inconvenience for this individual plaintiff, a citizen and resident of Illinois, if he must prosecute this action in a distant state at his own expense against public officials who are defended by lawyers provided by the state at the public's expense. In fact here there has been slight burden upon these defendants, at least up to this point, in defending this action in Illinois. A representative of the Illinois Attorney General's office orally argued this case before this court on behalf of the Louisiana public officials, thereby reducing the defendants' burden to the vanishing point.
 
 
 72
 The majority also contends that "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," Woodson, 444 U.S. at 292, 100 S.Ct. at 564, is not furthered here because plaintiff has unnecessarily burdened this court with an eleventh amendment issue by not suing defendants in Louisiana. Ante at 17-18. But this misses the point. In referring to the interstate judicial system's interest in efficiency, I think that the Woodson Court intended that we consider factors such as the convenience of witnesses, the presentation of all claims for relief in one court and the ability of the forum court to apply its own law or the law of another state. In this case, only one of these factors-convenience of witnesses, some of whom we assume are residents of Louisiana-would point away from Illinois as the appropriate forum.[2]
 
 
 73
 Finally, the majority does not even mention whether "the shared interest of several states in furthering fundamental substantive social policies," Woodson, 444 U.S. at 292, 100 S.Ct. at 564, cuts against Illinois as the proper forum. But a significant (perhaps the most significant) interstate policy issue present in this case is whether public officials who negligently permit dangerous convicts to escape from confinement and who negligently fail to follow cooperative procedures to secure the recapture of these convicts[3] will be liable for harm caused by such convicts in other states. Defendants have not expressed any interstate public policy which would dictate that they not be held amenable to suit in Illinois. Cf. Kulko v. California Superior Court, 436 U.S. 84, 93, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (allowing suit against father in California, when father was present in that state only twice in lifetime, might discourage divorced parents from making reasonable visitation agreements).
 
 
 74
 After its cursory treatment of the Woodson factors, the majority then analyzes the second prong of Woodson : whether the defendants purposefully availed themselves of the opportunity to act in the forum state in such a way that they "should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567. What the majority's analysis ignores is that Woodson (and its precursors) involved either individuals or business defendants, not public officials. I believe that the interest in predictability for structuring primary activities, Woodson, 444 U.S. at 297, 100 S.Ct. at 567, is much more relevant for private than public litigants. Public officials are frequently engaged in activities which, by their nature, cut across state boundaries; no amount of planning and structuring could limit the interstate effects of these activities.[4] Private individuals and businesses, on the other hand, can often minimize the interstate consequences of their actions-and the Woodson Court intended that they be afforded such an opportunity to avoid being haled into distant forums.
 
 
 75
 Thus, in the case before us, it is not unreasonable to conclude that the defendant prison officials might expect to be haled into the courts of other states if their negligence allowed prisoners in their custody to escape. This conclusion follows particularly when the escaped convicts formerly resided in Illinois and might reasonably be expected to return to Illinois. I therefore respectfully dissent.
 
 
 
 [1]
 The recent disposition in Payton v. United States, 679 F.2d 475 (Former 5th Cir. July 1, 1982) (en banc) is consistent with our analysis. In Payton, the court held that the decision whether to release a prisoner on parole was within the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, 2680(a) (1982). The only aspects of the conduct challenged by Payton that were held to be nondiscretionary were: (1) the Government's alleged failure to examine the assailant and report the findings to the Attorney General as required by statute, and (2) the bureau's provision of psychological treatment to the assailant, despite the absence of any statutory mandate requiring such treatment, in an allegedly negligent manner. The first of these "non-discretionary functions" falls squarely within the definition of "ministerial act" quoted above. The second is irrelevant to the instant case
 
 
 [2]
 Neither party has made reference to specific statutory sections pertaining to whether the Department of Corrections can sue and be sued in its own name
 
 
 [3]
 We reach this conclusion solely on the basis of Illinois law notwithstanding that the precise tortious act which is the basis of the litigation, i.e., permitting the escape, occurred in the State of Louisiana
 
 
 [1]
 At no time in this case has any party presented any argument that defendants are immune from suit for common law negligence because of the discretionary nature of their actions. Although we may affirm a lower court decision even on grounds not addressed below, I think the more prudent course is to remand the case for the development of an evidentiary record when we must rely upon an assessment of facts which the parties have not yet had a chance to develop. Nor have we had the benefit of additional briefing on common law liability of the individuals as we have had on the personal jurisdiction issue
 
 
 [2]
 In this respect, the district court may, if necessary, lessen the burden on witnesses and defendants by allowing the presentation of testimony through depositions rather than in-court testimony
 
 
 [3]
 Such cooperative procedures might include contacting local police officials in the convict's hometown to alert them to the escape. The defendants allegedly did not make such contacts in this case
 
 
 [4]
 For example, it would be difficult for prison officials to "structure" the interstate effects of a prison escape in which persons residing in other states were injured or killed; or for public health officials to "structure" the spread of a disease to animals in other states when the animals from their state are shipped to market; or for public school officials to "structure" vocational training so that its deficiencies remain at home and do not affect other states