John B. ANDERSON, Jane Evans, and
Gerald M. Eisenstat, Plaintiffs,

v.

Shirley HOOPER, Secretary of State of
the State of New Mexico, Defendant.

Civ. No. 80–432–M.

United States District Court,
D. New Mexico.

July 8, 1980

See also D.C., 498 F.Supp. 905.

William S. Dixon, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M.,

Joseph Goldberg, Albuquerque, N. M., Mitchell Rogovin, George T. Framton, Jr., Ellen Semonoff, Rogovin, Stern & Huge, Washington, D. C., for plaintiffs.

Jeff Bingaman, Atty. Gen., Jill Cooper, Asst. Atty. Gen., Santa Fe, N. M., for defendant.

## MEMORANDUM OPINION AND ORDER

MECHEM, District Judge.

This action for declaratory and injunctive relief was filed by the plaintiffs in this case on June 10, 1980. In their Complaint, the plaintiffs claim that the defendant has denied them the rights guaranteed under the due process and equal protection clauses of the Fourteenth Amendment. The plaintiffs have applied for a preliminary injunction in this matter. The defendant has moved to dismiss this suit because of a lack of subject matter jurisdiction and a failure by plaintiffs to state a claim upon which relief can be granted. A hearing on both issues was held on June 27, 1980.

The relevant facts involved in this case are not in dispute. Counsel for the plaintiffs and for the defendant entered into a joint stipulation of facts which was filed in this court on June 26, 1980. The plaintiff, John B. Anderson, is seeking to run as an independent candidate for President of the United States in the 1980 General Election. Plaintiff, Jane Evans, a registered New Mexico voter, wishes to cast her vote in the 1980 General Election for John B. Anderson. Plaintiff, Gerald M. Eisenstat, a registered New Jersey voter, intends to cast his vote in the 1980 General Election for electors pledged to Anderson. Plaintiff Anderson declared his intention to seek the nomination of the Republican Party for President of the United States on June 8, 1979. On February 15, 1980, a committee, pursuant to N.M.Stat.Ann. § 1–8–56 (1978), nominated and certified to the defendant Shirley Hooper, the New Mexico Secretary of State, the name of John B. Anderson as a candidate for the Republican Party in the New Mexico primary election for the office of President of the United States. On February 19, 1980, the defendant notified Mr. Anderson that his name would be placed on the Presidential Primary Election ballot unless he notified her otherwise, in writing, no later than Monday, April 14, 1980, which was the last day a candidate could withdraw from the primary election.

On April 24, 1980, Mr. Anderson notified the defendant that he had withdrawn as a candidate for the Republican presidential nomination, that he intended to seek the presidency as an independent candidate and that his name should be removed from the ballot of the 1980 New Mexico Presidential Primary Election. The defendant subsequently informed Mr. Anderson that his name could not be removed from the ballot because the request for such removal had not been made prior to the April 14 deadline. On June 3, 1980, the primary election was held in New Mexico. The name of John B. Anderson appeared on every Republican ballot in that election.

Mr. Anderson's supporters began obtaining the nominating petition signatures for his candidacy as an Independent on May 19, 1980. By June 3, 1980, Mr. Anderson was ready, willing and able to present to the defendant a declaration of candidacy, a full slate of electors for the presidency and the nominating petitions he had collected. Because of a March 4, 1980 deadline, the defendant would not have accepted these documents if they had been tendered on June 3, 1980.

The plaintiffs' complaint contains three counts. In their first count the plaintiffs claim that the New Mexico filing date applicable to Independent presidential candidates violates the equal protection clause of the Fourteenth Amendment in that it creates an arbitrary distinction between partisan and independent candidates. They also claim it creates another arbitrary distinction between independent candidates for the office of President who decide upon their candidacy prior to March 4, 1980 and those who decide on their independent candidacies after March 4, 1980. The plaintiffs' second count alleges that N.M.Stat. Ann. § 1–8–52 (1978) deprives the plaintiffs

of an opportunity to associate for the advancement of political beliefs in derogation of rights secured to them by the First and Fourteenth Amendments of the United States Constitution. The plaintiffs' third count alleges that N.M.Stat.Ann. § 1–8–52 (1978) violates the Supremacy Clause of the United States Constitution in that it is inconsistent with and frustrates the operation of federal laws governing the conduct of presidential elections.

The plaintiffs have requested that this court preliminarily and permanently enjoin the defendant from refusing to accept plaintiff Anderson's declaration of candidacy and nominating petitions and from refusing to certify plaintiff Anderson as an independent candidate for the office of President on the ballot in the November, 1980 New Mexico General Election. They further request a declaration that N.M.Stat. Ann. § 1–8–52 (1978) is invalid because it violates the Supremacy Clause and the First and Fourteenth Amendments to the Constitution of the United States. Although plaintiffs' application for a preliminary injunction was filed prior to the defendant's motion to dismiss, I feel it is appropriate to address the motion to dismiss first because a decision on that motion may preclude the necessity of addressing plaintiffs' application for a preliminary injunction.

The defendant's motion claims that dismissal of this action is necessary because no case or controversy as required by Article III of the United States Constitution exists and that plaintiff has failed to state a claim upon which relief can · be granted. The defendant claims that because plaintiff Anderson has not tendered, nor attempted to tender, his declaration of candidacy and petitions to the defendant, he has failed to present this court with a concrete case or controversy. The joint stipulation of fact filed in this case states that the defendant "would not have accepted plaintiff Anderson's declaration of candidacy, his nominating petitions or his designation of electors for the purpose of including his name as an independent candidate for President on the ballot for the general election, had they been tendered on June 3, 1980." Joint Stip-

ulation of Fact ¶ 40 at 12 (filed June 26, 1980). The defendant claims that the above–quoted stipulation does nothing to reduce the hypothetical nature of this case and that, therefore, the issues presented by the plaintiffs are not yet ripe for judicial decision.

While it is clear that the federal courts cannot constitutionally hear abstract or hypothetical questions, the difference between a hypothetical or abstract question and a "case or controversy" is one of degree. The basic inquiry is whether the "conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979), *citing Railway Mail Association v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945). In order to challenge the statute at issue in this case, the plaintiffs must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. *Cf. O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). It is clear from the joint stipulation of fact that the plaintiffs in this case have a realistic danger of sustaining injury as a result of the statute in question. Pursuant to N.M. Stat.Ann. § 1–8–64 (Supp.1979) the defendant, the Secretary of State, shall refuse to accept any petitions not complying with N.M.Stat.Ann. §§ 1–8–1 to 63 (1978). It is undisputed that plaintiff Anderson failed to submit his petitions for his independent candidacy by the first Tuesday of March as required under N.M.Stat.Ann. § 1–8–52 (1978). The Secretary of State cannot, therefore, accept those petitions. This inability is even more evident by the fact that in the Election Code it is clear that "shall" is mandatory. N.M.Stat.Ann. § 1–1–3 (1978). The Secretary of State has no choice but to refuse to accept Anderson's petitions. This refusal will mean that plaintiff Anderson will be unable to run as an independent presidential candidate in

the General Election in New Mexico. This will undoubtedly cause injury to his national campaign for the presidency of the United States and will adversely affect the rights of the other plaintiffs in this action. It should not be necessary for the plaintiffs to await the consummation of the threatened injury to obtain preventive relief. Impending injury is enough particularly when such injury is certain. *Cf. Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. at 298, 99 S.Ct. at 2308. A real and substantial controversy admitting of specific relief as distinguished from an advisory opinion upon a hypothetical state of facts exists here. *Cf. Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

The finding of an actual case or controversy in the present suit is further supported by the Supreme Court's affirming two cases attacking petition requirements under Illinois election statutes. In both of those cases the courts addressed the substantive issues even though questions of judiciability or ripeness had been raised. These cases were commenced prior to the plaintiffs filing any petitions. *Socialist Workers Party v. Chicago Board of Elections*, 433 F.Supp. 11, 14 (N.D.Ill.1977), aff'd 566 F.2d 586 (7th Cir. 1978), aff'd *sub. nom. Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Jackson v. Ogilvie*, 325 F.Supp. 864, 866 (N.D.Ill.), aff'd 403 U.S. 925, 91 S.Ct. 2247, 29 L.Ed.2d 705 (1971). If a potential candidate is able to complain of petition requirements before a deadline for petitions has arrived, surely the issues are ripe for attack on the validity of deadlines after a deadline has passed. The defendants' motion to dismiss for failure to present a case or controversy will, therefore, be denied.

The defendant also moved this Court to dismiss this action because the plaintiffs had failed to state a claim upon which relief may be granted. The defendant argues that even if this Court were to find N.M. Stat.Ann. § 1-8-52 (1978) unconstitutional

other New Mexico statutes would prevent the placing of plaintiff Anderson's name on the 1980 general election ballot. The defendant claims that N.M.Stat.Ann. §§ 1-8-19 and 1-10-7 (1978) are applicable to plaintiff Anderson, who ran in the Republican Presidential primary, and, therefore, his name cannot appear on the 1980 general election ballot. Section 1-8-19, which was enacted in 1975 as part of the Primary Election Law, provides:

> If a person has been a candidate for the nomination of a major political party in the primary election, he shall not have his name printed on the ballot at the next succeeding general election under any party name or party emblem except the party name on his declaration of candidacy filed for such primary election.

Section 1-10-7, which was enacted in 1977 and amended in 1979, provides:

> Except in the case of a candidate for the United States senate or United States representative who is also a candidate for president or vice president of the United States, no candidate's name shall appear more than once on the ballot. Whenever a person is, with his knowledge and consent, a candidate at any nominating convention or primary for nomination as the candidate of any political party for any office to be voted on at the election to be held next after such convention or primary, his name shall not be printed on the ballot at such election in the column under the party name and emblem of any other party.

The defendant argues that because plaintiff Anderson ran in the Republican presidential primary he is ineligible to run as an independent in the general election. The plaintiffs maintain that these two statutes are not applicable to Anderson because (1) they apply only to candidates for statewide, county, or legislative office; (2) Anderson would not appear on the general election ballot under any party name or emblem; and (3) Anderson was not a candidate in New Mexico's June 3 presidential primary.[1]

---

1. This third basis raised in support of the inapplicability of the two statutes to Anderson is spurious. The plaintiffs argue that because Anderson withdrew his consent to be a candi-

■ It is clear that these two statutes, commonly referred to as the "sore loser" statutes during this litigation, were enacted to prevent unsuccessful candidates in primary elections from running again in the next succeeding general election. It is not necessary that I address the issue of whether these two statutes are within the valid exercise of a legitimate state interest in the proper management of its ballots because I find the statutes to be inapplicable to plaintiff Anderson. Section 1–8–19 is a part of the Primary Election Law (N.M.Stat.Ann. §§ 1–8–10 to 52 (1978)). The Primary Election Law applies to "major party nominations for all offices that are to be filled at the general election with the exception of presidential electors." N.M.Stat.Ann. § 1–8–17 (1978). Under that limitation the presidential primary held in New Mexico on June 3, 1980 does not fit within the purview of the Primary Election Law. The presidential primary merely gives voters the opportunity to express their preference for the person to be the presidential candidate of their party, N.M.Stat.Ann. § 1–8–54 (1978), and as such is regulated in New Mexico by the Presidential Primary Act, N.M.Stat.Ann. §§ 1–8–53 to 63 (1978). The Presidential Primary Act was passed in 1977 by the Legislature and neither contains its own "sore loser" provision nor incorporates the provisions found elsewhere in the Election Code. The only connection apparent in the statutes between the presidential primary election and the primary elections is that they are held on the same date. N.M.Stat.Ann. § 1–8–54 (1978). Plaintiff Anderson was a candidate in the Republican *presidential primary* but not in the Republican *primary*. Sections 1–8–19 and 1–10–7 are inapplicable to plaintiff Anderson and, therefore, do not prevent the placing of his name on the general election ballot.

Even if sections 1–8–19 and 1–10–7 applied to presidential primaries they would not prevent plaintiff Anderson's name from appearing on the general election ballot as an independent. Those two statutes only prevent unsuccessful primary candidates from appearing on the next general election ballot under any party name or party emblem different from that he ran under in the primary. Plaintiff Anderson seeks to run as an independent candidate and as such would be "a candidate without party affiliation for an office to be voted on at a general election . . . ." N.M.Stat.Ann. § 1–8–45 (1978). In order to have a party name or emblem the chairman of the state central committee of a qualified political party has to file with the Secretary of State a certificate setting forth the name and showing a representation of the emblem. N.M.Stat. Ann. § 1–7–6 (1978). To qualify as a political party, rules and regulations must be filed with the Secretary of State. N.M. Stat.Ann. § 1–7–2 (Supp.1979). It is difficult to understand how one could be, by definition, "without party affiliation" and at the same time be running for an office under a party name or party emblem.

■ Defendant argues that § 1–8–19 was enacted prior to New Mexico's election laws allowing for independent candidacies and should be construed to prevent unsuccessful primary candidates from running as independents in the succeeding general election. It is true that § 1–8–19 was enacted in 1975 and the statutory provisions for independent candidates were not enacted until 1977. Section 1–10–7, however, was passed in the same legislative session as the independent candidate provisions and was amended in 1979. It still refers to party names and emblems although the legislature was clearly aware that independent candidates could exist. Under those circumstances I cannot find that the legislature intended anything other than to prevent *party* switching after an unsuccessful primary bid in order to run in the general election.

date in the Republican primary before the primary was actually held he was not a legitimate candidate in the primary pursuant to N.M.Stat. Ann. § 1·10 7 (Supp.1979). Anderson failed to

timely withdraw from the Republican primary so he was a legitimate candidate in the Republican primary.

Sections 1–8–19 and 1–10–7 do not prevent an unsuccessful party primary candidate from running as an independent in the succeeding general election. Plaintiffs have not failed to state a claim upon which relief can be granted. Defendant's motion to dismiss on those grounds shall be denied. It is therefore necessary to address plaintiffs' application for a preliminary injunction. They have requested this Court to enjoin the defendant from continuing to refuse to accept plaintiff Anderson's declaration of candidacy, nominating petitions, and designation of electors for the purpose of qualifying Anderson to appear on the ballot in New Mexico's general election as an independent candidate for president.

 In order to be entitled to any preliminary injunction in this matter, the plaintiffs must show that they have a substantial likelihood of success on the merits and that if a preliminary injunction is not granted they will suffer irreparable injury. Plaintiffs challenge the constitutionality of N.M.Stat.Ann. § 1–8–52 (1978) on two related bases. First, the plaintiffs claim that the early filing deadline impermissibly burdens their constitutional rights. The rights which the plaintiffs claim are burdened are the right of individuals to associate for the advancement of political beliefs and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights have been deemed to be fundamental rights by the United States Supreme Court. *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 185, 99 S.Ct. 983, 991, 59 L.Ed.2d 230 (1978). The plaintiffs allege that to require an independent candidate to decide to run and to complete the necessary formalities by March 4, 1980 interferes with their rights of association and effective voting.

Secondly, the plaintiffs assert that the early filing deadline applicable only to those wishing to run as an independent candidate in the general election denies plaintiff Anderson the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution. The New Mexico Election Code sets up different filing deadlines for different types of candidates. Independent candidates for president must file their declarations of candidacy and nominating petitions by March 4, 1980. The major and minor parties do not need to designate their nominees for president until September 15, 1980. Plaintiffs claim that this six–month difference as to when presidential candidates must be named results in an arbitrary and invidious discrimination against independent presidential candidates, as distinguished from partisan candidates.[2]

The importance of the plaintiffs' interests which are at stake is undeniable. The right of individuals to associate for the advancement of political beliefs and the right of qualified voters to cast their votes effectively both rank among this country's most precious freedoms. *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). When ballot access is restricted by statutory requirements, as it is in this case by the March 4 deadline, the State must show a compelling interest which is furthered by its requirements. *Cf. Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. at 184, 99 S.Ct. at 990.

 There are a number of interests that states have historically proffered as reasons for limiting access to the ballot. The defendant in this case has not offered any reason which could justify a March filing date for an independent presidential candidate and a September deadline for the naming of partisan presidential candidates. Certainly the State of New Mexico can further its interests in limiting ballot access by having deadlines. Such deadlines, however, should be uniform for candidates for the same office. The State does have an

---

**2.** Plaintiff also argues that the deadline also creates an invidious classification between serious independent candidates deciding to run before March 4, 1980 and those deciding to run after March 4, 1980. Because of my determination on the equal protection based on an arbitrary classification between independent and partisan candidates, I decline to address that issue at this time.

interest in keeping its ballots manageable, in protecting the integrity of the political process from frivolous candidates and in the stability of the political system. These interests are not furthered by having an extraordinarily early deadline for presidential independent candidates.

 Under the facts in this case, I cannot find that any state interest is furthered by the March 4 deadline for independents. The burden placed on the plaintiffs' fundamental rights and the classification between partisan and independent presidential candidates can be allowed only if the State has a compelling interest at stake. The defendant has failed to offer any compelling interests which the State may further in having such an early filing deadline for independent candidates for president. Under the circumstances, I find that the plaintiff has a substantial likelihood of success on the merits in this case.

Inquiry must next be made as to whether or not the plaintiffs will sustain irreparable injury if a preliminary injunction is not issued during the pendency of this litigation. I find that such injury would occur if I failed to issue a preliminary injunction. The general election will occur in a few months. If plaintiff Anderson's name does not appear on the general election ballot there would be no adequate remedy at law to compensate him for this injury should he prevail in the final judgment. Furthermore, the rights of the other plaintiffs in this action of being able to cast their votes effectively for the candidate of their choice would be irreparably harmed. The irreparable injury which will occur to the plaintiffs if a preliminary injunction is not issued is not outweighed by any possibility of harm to the defendant or by any public interest. The defendant has argued that the State of New Mexico will be harmed if she is unable to enforce the filing deadlines. There has been no indication that the defendant will be inundated with declarations of candidacy and petitions from other potential independent candidates if she is not allowed to enforce the March 4, 1980 filing deadline for independent candidates for the general election. If the ballots were already printed and an election was imminent equitable considerations might justify this Court withholding immediate relief. Here, however, the defendant has sufficient time and resources to put Mr. Anderson's name on the ballot. Given the clear unconstitutionality of N.M.Stat.Ann. § 1–8–52 (1978) on its face and as applied to Mr. Anderson, denying a preliminary injunction would be inequitable. The defendant shall be preliminarily enjoined from continuing to refuse to accept plaintiff Anderson's declaration of candidacy and nominating petitions and from refusing to certify plaintiff Anderson as an independent candidate for the office of president on the ballot in the November, 1980 New Mexico General election. Now, Therefore,

IT IS ORDERED that defendant's motion to dismiss be, and hereby is, denied.

IT IS FURTHER ORDERED that plaintiffs' application for preliminary injunction be, and hereby is, granted.