**Ernest TERRY, Plaintiff,**

v.

**Baxter BURKE, Defendant.**

**No. 84 C 1627.**

United States District Court,
N.D. Illinois, E.D.

Aug. 22, 1984.

---

Robert Harlib, Dale Smirl, Chicago, Ill., for plaintiff.

Kevin Connor, Asst. Atty. Gen., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

The complaint in this action alleges that plaintiff Ernest Terry met with his parole officer, defendant Baxter Burke, who is employed by the Illinois Department of Corrections, on September 28, 1983. Burke allegedly handcuffed Terry and beat him without provocation. Count 1 of the complaint seeks damages under 42 U.S.C. § 1983 (1982) for Burke's alleged violations of Terry's federal constitutional rights. Count 2 is a pendent state claim for assault and battery; count 3 is a pendent state claim for false imprisonment. Burke is named "individually and as agent of the Illinois Department of Corrections."

█ Defendant has moved to dismiss the pendent claims, arguing that they are barred by the eleventh amendment[1] as interpreted in *Pennhurst State School & Hospital v. Halderman*, — U.S. —, 104

S.Ct. 900, 79 L.Ed.2d 67 (1984). In *Pennhurst*, the Court considered the propriety of an injunction requiring state officials to comply with state law in their administration of a state-owned hospital for the mentally handicapped. The Court recognized longstanding authority that the eleventh amendment embodies the traditional sovereign immunity of the states and accordingly bars a suit against a state by a private party without its consent, absent congressional abrogation of the state's immunity. *Id.* 104 S.Ct. at 907. *See also Quern v. Jordan*, 440 U.S. 332, 342, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974); *Ex parte State of New York*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921). The amendment also bars a suit against state officials "when 'the state is the real, substantial party in interest.'" *Pennhurst*, 104 S.Ct. at 908 (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). However, a suit challenging a state official's enforcement of an allegedly unconstitutional state statute is not considered to be against the state even though the decree will operate against the state. *Id.* 104 S.Ct. at 909; *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The rationale of this "exception to [the] general rule," *Pennhurst*, 104 S.Ct. at 909, is that unconstitutional enactment is void and the state officer is accordingly stripped of his official or representative character. Even in such circumstances, however, the eleventh amendment bars an award of retroactive monetary relief from the state treasury. *Edelman v. Jordan*, 415 U.S. at 666–67, 94 S.Ct. at 1357–58. In *Pennhurst*, the Court characterized *Edelman*'s distinction between prospective and retrospective relief as "fulfill[ing] the

---

**1.** "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Both plaintiff and de-

fendant are citizens of Illinois; however, the amendment has been construed to bar suits by citizens against their own states. *E.g., Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

underlying purpose of *Ex parte Young* while at the same time preserving to an important degree the constitutional immunity of the States." *Pennhurst*, 104 S.Ct. at 911.

In *Pennhurst*, a federal court had issued an injunction based on state officials' violation of duties imposed not by the constitution but rather by state law. The plaintiff argued in the Supreme Court that the rationale of *Ex parte Young* applied to state law claims as well as federally-based claims. The Court rejected this argument, stating that the *Young* doctrine had been "accepted as necessary to permit the federal courts to vindicate federal rights ...." *Pennhurst*, 104 S.Ct. at 910. That purpose is not served, the Court said, where relief is sought on the basis of state law. Further, "it is difficult to think of a greater intrusion of state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 911. The Court therefore concluded that *Young* does not apply to a suit against state officials based on state law violations.

Read broadly, *Pennhurst* arguably may be construed as barring a state tort claim of the type plaintiff makes here; when damages are awarded for state-law torts, a state official is being mulcted for not complying with state law. However, it is important to bear in mind that in *Pennhurst*, at least as the majority of the justices viewed the case, it could not be questioned that the relief ordered operated against the state itself. *Id.* at 911–12. "[A]ll the relief ordered by the courts below was institutional and official in character. To the extent there was a violation of state law in this case, it is a case of the State itself not fulfilling its legislative promises." *Id.* at 912. Thus, *Pennhurst* was not a case in which the relief would operate only against individual state officers. Rather, the case presented the state law equivalent of the factual setting of *Ex parte Young;* the Court's holding was that *Ex parte Young* did not apply to a state law claim, and accordingly the Court applied the "general rule" that the eleventh

amendment bars a suit against the state. Further, the Court took pains to distinguish several cases cited by the dissenting justices that permitted actions for damages against federal officials in spite of a defense of sovereign immunity, stating that those cases "drew a careful distinction between [actions for damages in tort against the individual officer] and suits in which the relief would run more directly against the State." *Id.* 104 S.Ct. at 914 n. 21 (citing cases). *See generally Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–88 & nn. 7, 8, 69 S.Ct. 1457, 1460–61 & nn. 7, 8, 93 L.Ed. 1628 (1949) (distinguishing between cases seeking damages in tort against an individual officer and those seeking injunctive relief against the officer in his official capacity), *cited in Pennhurst*, 104 S.Ct. at 914 n. 21. This indicates that the Court did not intend to express a broad rule applicable to cases like the present one.

■ As *Pennhurst* itself recognized, the key issue in determining whether the eleventh amendment is a bar to a particular lawsuit is whether the state is the real party in interest. If it is not, the eleventh amendment presents no bar to the suit, for it is not an action against the state. This principle applies equally whether the suit is based on federal or state law, irrespective of *Pennhurst*, for it is not based on the *Ex parte Young* "ultra vires" theory.

■ In the present case, plaintiff has named Burke individually and "as agent of the Illinois Department of Corrections." The Department is not a party to this lawsuit, and plaintiff does not expressly seek relief against it. However, to the extent that the "agency" allegation seeks to hold the Department of Corrections responsible for Burke's conduct, it is out of place here. Without deciding whether an action against Burke in his official capacity (if indeed a parole officer has an official capacity) would be appropriate apart from the eleventh amendment, the clear import of *Pennhurst* and the other eleventh amendment cases on which it relied is that plaintiff

cannot make the state the real party in interest to a federal court lawsuit based on state law violations.[2]

■ However, insofar as plaintiff seeks damages against Burke individually, the eleventh amendment and *Pennhurst* pose no obstacle to his claims. The "individual capacity" aspect of this litigation in no way seeks to require the state of Illinois to pay plaintiff damages. Though under *Adden v. Middlebrooks*, 688 F.2d 1147, 1150–52 (7th Cir.1982), we must first determine whether the suit is one properly brought against defendant as an individual under Illinois law, where, as here, the officer is alleged to have acted beyond the bounds of his official authority, the action properly may be brought against him individually. *E.g., Hoffman v. Yack*, 57 Ill.App.3d 744, 15 Ill.Dec. 140, 373 N.E.2d 486 (1978). The eleventh amendment and *Adden* therefore do not bar this action.

■ It may be that defendant's motion to dismiss is based in part on the fact that Illinois indemnifies state employees for judgments against them in certain circumstances. *See* Ill.Rev.Stat. ch. 127, § 1302 (1983). We have, however, recently rejected that argument, holding in *McAdoo v. Lane*, 564 F.Supp. 1215, 1217–20 (N.D.Ill. 1983) that such a voluntary choice by a state does not convert a judgment against an individual state officer into a judgment that binds the state. *See also Demery v. Kupperman*, 735 F.2d 1139, 1148–49 (9th Cir.1984). Defendant has said nothing in this lawsuit that persuades us to depart from the principle of *McAdoo*.

For the reasons stated above, defendant's motion to dismiss counts 2 and 3 of the complaint is denied except insofar as plaintiff seeks to sue defendant in his official capacity. Defendant is to answer counts 2 and 3 within 20 days. Prior discovery/trial schedule to stand.

---

**2.** The same is true of plaintiff's § 1983 claim. Further, any § 1983 claim against the state or the Department of Corrections would necessarily fail here, for the complaint contains no allegation that plaintiff's injuries were the proxi-

mate result of a policy of the state or the department. *See generally Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).