**Adlai E. STEVENSON, et al., Plaintiffs,**

v.

**STATE BOARD OF ELECTIONS, Defendants,**

**Mark Fairchild, Dominick J. Jeffrey, George M. Laurence, and Elma J. Washington, Intervenors.**

No. 86 C 2800.

United States District Court, N.D. Illinois, E.D.

May 16, 1986.

Kelly R. Welsh, John E. Muench, Richard W. Shepro, Rosanne J. Araci, Mayer, Brown & Platt, Chicago, Ill., for plaintiffs.

Michael J. Hayes, Roger Flahaven, James R. Carroll, Bart Murphy, Robert McFarland, Asst. Attys. Gen., Chicago, Ill., for defendants.

Russell J. Stewart, Park Ridge, Ill., for intervenors.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

The problem posed by this case was presented on April 23, 1986. Subject to appeal, the attention of this court to it should be completed with this ruling. It raises this question: Is the Illinois statute establishing the filing deadline for persons seeking to run as independent candidates in the general election to state and county offices in this state unconstitutional?

The principal plaintiff who brought this question to this court is the former United States Senator from Illinois, Adlai E. Stevenson. Mr. Stevenson, who unsuccessfully ran for governor of Illinois in the campaign of 1982 on the democratic ticket, began again a campaign for that office by filing his papers as a democratic nominee for governor in December of 1985. A then relatively unknown person named Mark Fairchild also filed to run for lieutenant-governor in the democratic primary. Both Mr. Stevenson and Mr. Fairchild were nominated in the primary held on April 14, 1986. Mr. Stevenson, soon thereafter, determined that he would not run on the ballot with Mr. Fairchild because of his opposition to certain political and other views he discovered to have been espoused by Mr. Fairchild. In the general election in Illinois, the party candidates for governor and lieutenant-governor are listed as a team, with each voter casting one vote for the team.

After the nomination Mr. Stevenson formally resigned his position as the selected candidate for governor on the democratic ticket. Thereafter he publicly announced

his desire to run for governor as an independent candidate in the November election. But under the Illinois Election Code, his filing as an independent candidate had to have been performed back in December of 1985. The Election Code provides no other filing date. This provision of the Code, he says in the instant case, discriminates against him in violation of his freedom of association under the First Amendment, and in violation of his right to equal protection of the laws (freedom from a discriminatory classification) under the Fourteenth Amendment. By this suit he seeks to avoid this provision of the election code. He seeks to be able to file as an independent candidate at this time.

The proper defendant here is the Illinois Board of Elections, the official body vested by Illinois election laws with the responsibility of administering the Illinois election laws. Mr. Stevenson has been joined as plaintiffs by two voters who believe that their rights as voters also are injured by the filing deadline in question, and he is joined also by a prospective independent candidate for Congress who had neither been nominated in the primary nor listed as an independent candidate.

The defendant Board of Elections has also been joined by the Commissioners themselves. Then by a special order of this Court entered on May 2, 1986, the democratic nominee for lieutenant-governor, Mr. Fairchild, was allowed to intervene as another defendant.

The first preliminary task of this court, as in any other case, is to determine its jurisdiction over the parties and the subject matter. The defendants all claim that this court lacks jurisdiction because of the Eleventh Amendment to the Constitution of the United States which confers, they say, immunity upon the state from suit in federal court. The Eleventh Amendment provides that:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States

by citizens of another state, or by citizens or subjects of any foreign state. And this amendment has long been interpreted to mean that a state is immune from suit in federal court brought by one of its own citizens as well. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Research discloses, however, that there are many exceptions to this literal statement, and that by a long line of consistent decisions of both the Supreme Court and inferior courts, a citizen's challenge to a state statute on the grounds that it is, either on its face or in its enforcement, in violation of the Constitution of the United States is not barred by the Eleventh Amendment. *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Griffin v. City School Bd.,* 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Orleans Parish School Board v. Bush,* 242 F.2d 156 (5th Cir.1957), *cert. denied* 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed.2d 1436; *Terry v. Burke,* 589 F.Supp. 853 (D.C.Ill.1984). On the basis of established precedent this Court's jurisdiction in this case is not subject to an Eleventh Amendment restraint.

The second preliminary task is to determine whether Mr. Stevenson and/or his co-plaintiffs have standing to sue. This task asks whether or not a case or controversy has matured to the point where the plaintiffs have a judicially recognized right to bring the suit. The defendants in this case all suggest that the plaintiffs have no standing because they have not tendered at this late date their petitions before the board and had them rejected. But this gesture of formality is unnecessary. The duties of the board are ministerial; the language of the statute simple. The statute does not confer upon the board the power to accept the declarations of independent candidacy beyond the statutory deadline, and to require the defendant to go through the gesture of refusing the declarations for independent candidacy before the plaintiffs have the standing to raise the question of the constitutionality in

the first place, is to require a futile and useless act. Mr. Stevenson has been nominated in the democratic primary, he has publicly and officially resigned from that candidacy, and he has publicly announced his purpose to run as an independent candidate. Even the defendants, if true to their pledge before this Court not to delay this Court's decision, should not justly ask for anything more. Similar situations have been found sufficient to justify standing to sue. *Sporhase v. Nebraska*, 458 U.S. 941, 944 n. 2, 102 S.Ct. 3456, 3458 n. 2, 73 L.Ed.2d 1254 (1982); *Illinois State Bd. of Elec. Commrs. v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Nyquist v. Mauclet*, 432 U.S. 1, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977); *Anderson v. Hooper*, 498 F.Supp. 898 (D.N.M. 1980); *Jackson v. Ogilvie*, 325 F.Supp. 864 (N.D.Ill.) *aff'd* 403 U.S. 925, 91 S.Ct. 2247, 29 L.Ed.2d 705 (1971).

Consider now the central question presented in this case. The general problem of different requirements for different types of access to the ballot has been reviewed and is not new to judicial attention. In *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), the Court held that Ohio's election laws relating to the establishing of new political parties, taken as a whole, violated the equal protection clause. The Court examined the restrictions on the formation of the new party in the form of the signature requirements, the filing deadline, and the lack of alternative means by which to access the ballot, to find that the election laws gave a decided advantage to the two established political parties over new parties. Together these restrictions rendered ballot access a virtual impossibility for newly-created parties. Even in so holding, however, the Court noted that the State does have an interest in attempting to see that the winner of an election should represent the choice of the majority of voters. The Ohio restrictions challenged in *Williams* were unconstitutional.

In *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), the Court struck down a Texas law that required candidates in political primaries to pay filing fees ranging as high as $8,900.00. The Court reasoned that the system used a criterion of ability to pay as a condition precedent for securing a place on the ballot. The Court found that the filing fees excluded legitimate as well as frivolous candidates, but at the same time stressed that the state's legitimate interest in promoting efficiency in the election process, in avoiding voter confusion, and in assuring that the person elected represent a strong plurality, if not majority of the voters, must be respected. *Id.* at 145, 92 S.Ct. at 856.

Still earlier, in *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), the Court upheld the requirement that an independent candidate demonstrate substantial support by acquiring a certain minimum number of signatures to garner a place on the ballot, while the candidate for the party primary in *Jenness* did not need to supply any signatures at all to run in the primary. Both candidates were required to meet an identical filing deadline. The Court noted that the mutual filing deadline was not unreasonably early, *id.* at 438, 91 S.Ct. at 1974; and emphasizing the state's interest in avoiding confusion, deception, and frustration in the political process as a result of frivolous or fraudulent candidates, the court upheld the signature requirements as a means for an independent candidate to demonstrate enough support to justify including his name on the general election ballot.

In *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), a California Election Code provision denied ballot positions to prospective candidates who earlier themselves had voted for a candidate in the immediately preceding primary, or who had been registered with a political party within one year of that party's most recent primary. The so-called "disaffiliation statute" imposed a burden on the prospective independent candidate. He had to decide to seek independent ballot status at least one full year before he could submit his petition to run as an independent.

The plaintiffs asserted their interest in making a late rather than an early decision to run as independent candidates, but the Court found that the State's compelling interests outweighed the candidates' right to postpone their decisions. The Court considered the state's right to protect the direct primary process by discouraging any independent candidacy inspired by short term political goals, pique, or personal quarrel, and by preventing at the same time party raiding. *Id.* at 735, 94 S.Ct. at 1281.

Finally, in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), the Court enunciated for the benefit of lower courts and litigants in these matters a prevailing standard by which ballot access restrictions should be judged. In that case, an independent presidential candidate, former Congressman John B. Anderson, of Illinois, first campaigned for the Presidency on the Republican ticket. He abandoned his Republican campaign and pursued an independent candidacy, but he was denied access to the ballot in Ohio by a statute which required that he file his independent candidacy by a certain deadline. That deadline was March 20, 1980, 75 days prior to the state's party primary, and approximately 230 days prior to the state's general election. The Court held that this kind of deadline would impinge on voter's rights, not only in Ohio, but in any other state. In analyzing the constitutionality of the filing deadline in *Anderson*, the Court first assessed the character and magnitude of the plaintiff's asserted injury. It next identified and evaluated the precise interests put forward by the state to justify the burden imposed upon the candidates by its rule. Finally, the Court measured the extent to which the state's interest in a valid election system made it necessary to burden the plaintiff's right to run. *Id.* at 789, 103 S.Ct. at 1570.

In examining the injury resulting to the election system's filing deadline, the Court's primary concern lay not with the candidate, but with the voters who chose to associate together and who desired to cast their votes effectively. *Id.* at 806, 103

S.Ct. at 1579. The Ohio deadline completely barred Anderson from the general election ballot; the Court did not mention the availability of another access to the ballot by way of a new party. Because the Court found that a write-in option, also available in Illinois, alone was insufficient to allow an effective candidacy and therefore an effective vote, held that the harm sustained by the candidate and the voters was greater than any benefit that could obtain to the election system by retaining the filing date.

The state identified three interests to justify its early filing deadline for independent presidential candidates: voter education, equal treatment for partisan and independent candidates, and political stability. *Id.* at 796, 103 S.Ct. at 1573. In measuring the strength of these interests, the Court found that advances in communication technology now permit adequate voter education in a relatively short time. *Id.* at 797, 103 S.Ct. at 1574. The Court observed that the filing deadline did not promote equal treatment, because a democratic or republican presidential nominee could appear on the general election ballot even if he failed to meet the primary deadline in Ohio but was thereafter nominated at the national convention. An independent candidate would receive no such second chance. *Id.* at 799, 103 S.Ct. at 1575. As to the political stability interest, the Court noted that the Ohio deadline did not serve as either a "sore loser" or a "disaffiliation" statute, that it did not enable the primary election to narrow the field of candidates for the general election, and that it was not precisely drawn to protect the parties from "intra-party feuding." *Id.* at 804–05, 103 S.Ct. at 1578–79. Under the circumstances, the Court found that the *Anderson* March deadline did not materially advance the state's interest in political stability.

Because that deadline did not materially advance the state's asserted interest, and because it denied Anderson any access to the ballot, thus effectively denying the First and Fourteenth Amendment rights of the voters who wished to vote for him, the Court concluded that the early filing date

statute for independent candidates unnecessarily burdened the rights asserted by the plaintiff, and held the statute unconstitutional.

In the instant case, Mr. Stevenson and the other plaintiffs contend that the outcome in the *Anderson* case should control the outcome here. However, as the Supreme Court stated in *Anderson*, constitutional challenges to state election laws "cannot be resolved by any litmus-paper test." *Id.* at 789, 103 S.Ct. at 1570. This Court recognizes that on a factual basis *Anderson* is different from the instant case. *Anderson* involved a national election in which the timing of candidacy requirements, such as filing petitions, differ among the 50 states of the Union. And in the instant case we are concerned with the election laws of one state only. In *Anderson* the Court had to be concerned with causing Ohio as closely as possible to fit in a general pattern embracing all of the states. Indeed, in analyzing Ohio's asserted interests in its filing deadline, the Court minimized those interests principally in the context of a national presidential election. This court may not merely mechanically adopt the outcome in that case for a decision here. Instead, I am expected by case analysis only to accept for guidance the standards, the reasoning, and the guidelines followed by the Supreme Court in the *Anderson* case in analyzing the specific facts in this case for arriving at a proper determination here. And this, of course, cannot be done without first understanding the Illinois Election Code.

The Illinois Election Code provides a potential candidate with three avenues for obtaining access to the ballot: 1) nomination by an established political party; 2) independent candidacy, and 3) formation of a new political party. In addition, as in Ohio, a candidate may also make a "declaration-of-write-in-candidacy," and he then becomes eligible to receive write-in votes which would be counted on his or her behalf. The filing deadline for a candidate seeking nomination by an established political party is identical to that for an independent candidate. Filing is allowed between 92 and 99 days prior to the date of the primary elections. A new political party candidate must submit his slate and file between 92 and 99 days at any time prior to the general election. In order for a voter to write in a candidate's name, that candidate must have filed a declaration of intent to run as a write-in candidate not later than the Friday immediately preceding the November general election.

In order for a candidate to run in the November election as a member of an established political party, he must have filed his nomination papers by the December deadline and must have won that party's primary. An established political party candidate who has lost in the primary may not run in the November general election as an independent candidate because his filing date has passed, and Section 10-2 prevents his running as a new party candidate. His only recourse is to be elected as a write-in candidate. This case presents for the very first time, as far as case law on elections reveals, the situation in which a candidate proposes to run in the November general election, who was nominated in his party's primary, but then resigned from the ticket. Such candidate proposes to run, not as a member of a newly-formed party nor as a write-in candidate, either of which is possible under the Illinois Code, but as an independent candidate. This recourse is not available to him under the present applicable filing requirement of the Illinois Election Code.

A person seeking at this time to form a new political party need not and may not file before 99 days prior to the November general election. Such candidate, if seeking to run for governor, must include in his nomination petition a complete list of candidates of this new party for all of the offices to be filled in the state election. As stated above, a candidate seeking to campaign for the governorship as a write-in need only file his declaration on or before the Friday immediately preceding the November general election.

It is in the context of this election scheme that the Court in this case is called upon to compare the relative benefits and inequities to the plaintiffs on the one hand, with the elective responsibilities of the state on the other. Plaintiffs who sue as voters are not disenfranchised by Section 10–3 of the Election Code because their candidates as yet have access to the ballot. In *Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), a New York election code required voter enrollment thirty days before a general election in order for such voter to be entitled to vote in his party's next party primary. The Court held that the time deadline which the voters chose to disregard did not constitute an absolute prohibition on their association- al and franchise rights, and therefore did not violate the Constitution. Finding that the plaintiff's situation was not caused by the statutory deadline but rather by the plaintiff's compliance with the statute, the Court noted that the filing deadline was tied to the legitimate state purpose of pre- scribing the integrity of the ballot process. *Cf. Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1979) (finding one year durational requirement unneces- sarily burdensome as it completely denied access to the ballot.) The plaintiff voters here have not entirely lost the right to vote for the candidate of their choice, should their candidates avail themselves of the remaining ballot access measures, to wit, the formation of a new party. This avenue also apparently was unavailable to Ander- son.

Because the prospective candidates be- fore this Court have existing ballot access measures available to them, the magnitude of their injury is to be reflected only in the difference between being able to run as an independent on the one hand, and running as a new political party candidate on the other. The difference does reflect measur- able burdens on the candidates but, unlike *Anderson,* the plaintiffs here still have op- portunities to appear on the ballot, though those opportunities are less desirable to them than running independent candida- cies.

In support of the independent filing deadline, the state correctly notes that it has a substantial and legitimate interest in regulating its election procedures. *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 36 L.Ed.2d 714 (1974). One such interest is to prevent splintered parties and unrestrained factionalism. *Id.* at 735, 94 S.Ct. at 1281. *Anderson v. Celebrezze,* 460 U.S. at 803, 103 S.Ct. at 1577. As has been stated before, the Supreme Court in *Storer* recog- nized as legitimate the state's goal of dis- couraging independent candidacies prompt- ed by short-term political goals, pique, or personal quarrel. *Storer,* at 735, 94 S.Ct. at 1281; *Anderson,* at 803, 103 S.Ct. at 1577. Splintered parties and unrestrained factionalism may do significant damage to the fabric of government. *See* The Feder- alist, No. 10 (Madison). There are further substantial state interests at stake: en- couraging compromise and political stabili- ty; attempting to ensure that the election winner will represent a majority of the community; and providing the electorate with a ballot that will eliminate voter con- fusion. *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *Bullock v. Carter, supra,* at 145, 92 S.Ct. at 856.

The Supreme Court went further in *Stor- er* and recognized that the general election ballot should be reserved for major strug- gles and should not provide a forum for continuing intra-party feuds. 415 U.S. at 735, 94 S.Ct. at 1281. To this extent, the simultaneous filing deadline precludes a partisan candidate from assessing his chances of securing the nomination as slight, then quitting an established political party to run anyway as an independent. The identical filing deadline acts automati- cally to dissuade the "sore loser" from dividing the members of the established party by running as an independent. To the extent that this filing deadline in Illi- nois prohibits a person initially committed to the party's primary from abandoning his commitment and running as an indepen- dent candidate, the statute works as an equivalent to the California disaffiliation statute, and discourages factionalism in the

party by discouraging intra-party disputes to continue beyond the primary on into the general election, and forces a true independent to file no later than an established party candidate. The Supreme Court decisions in *Anderson, supra; Storer, supra; Rosario, supra;* and *Jenness, supra,* all support the position taken herein. Accordingly, the interests of ballot integrity, political stability, and voter representation all reflect legitimate state interests to be advanced by statute.

■ Finally, the *Anderson* guideline requires the Court to determine the extent to which the state's interests make it necessary to burden the plaintiffs' rights. The rights asserted are the plaintiffs' associational freedoms and equal protection. Because the filing deadline does not bar the candidates' access to the ballot, neither is the plaintiffs' associational freedom impaired to the extent presented in *Anderson.* While there is some question whether the disaffiliation function of the filing deadline might be more narrowly tailored to the asserted state interest, it is no more onerous than the statute upheld by the Supreme Court in *Jenness.* 403 U.S. at 438–39, 91 S.Ct. at 1974–75. As in Georgia, the Illinois state election code provides an "open" system for ballot access. On balance, the injury sustained by the constraints on associational freedoms is not sufficient to overcome the substantial state interests involved.

■ The plaintiffs' equal protection claim rests on the separate filing deadlines required of independent candidates and newly formed parties. The plaintiffs argue that independent candidates should be treated as new parties for the purpose of establishing a filing deadline. The Supreme Court in *Storer* recognized, however, that independent candidates and new party candidates are dissimilar and do not represent interchangeable rights. *Storer,* at 745–46, 94 S.Ct. at 1286–87. An independent candidacy allows an individual to campaign alone without the necessity of establishing a new political organization. Like a partisan primary candidate, the inde-

pendent is predominantly concerned with his individual campaigning, and does not need unilaterally to create an entire party platform. A person seeking to establish a new party, on the other hand, abdicates independence and individuality to create a distinct political organization. This candidate runs with a slate and has responsibilities which extend beyond those contemplated by an independent.

Furthermore, the political function fulfilled by the two candidacies is different. The relative freedom to run as an independent in Illinois requires reaching an early decision to seek running status. This burden exists to protect the state's goal of maintaining a ballot access with integrity. But once this deadline passes, the balance of state interest shifts to that of a guardian of political stability. A relatively more burdensome option is allowed to the new party candidate. This burden in turn is balanced by the later filing date. This new party mechanism provides the flexibility to allow the system to adjust for the changing circumstances from which political opportunities arise throughout the election process. *Anderson, supra,* at 791, 103 S.Ct. at 1571. If the new political parties were required to file at the same time as the independent and partisan candidates, the Illinois system would be less able to reflect emerging issues. And because the new parties require more organizational cohesion, they are less likely to arise from "short term political goals, from pique, or from personal quarrel," the things which could prompt such candidate precipitously to separate from his party, disruptively, fractionalizingly. *Storer,* at 735, 94 S.Ct. at 1281. *Anderson,* at 803, 103 S.Ct. at 1577. The different filing deadlines are not capricious. They are reasonably tied to their particular functions. The plaintiff's equal protection argument fails for the reasons discussed to disturb the constitutionality of the statute.

Finally and in summary, the Court finds it has subject-matter jurisdiction in that the Eleventh Amendment of the United States Constitution is not a bar to this Court's considering the matter of the constitution-

ality of Section 10–3 of the Illinois Election Code. The Court finds that plaintiffs have standing to bring this case and that there is a sufficient case and controversy setting, based on the facts alleged in the complaint and stipulated to by the parties. In this respect, the Court concludes that to require the plaintiffs to tender their petitions and be denied access to the ballot as independent candidates is unnecessary as a futile and formalistic gesture.

The Court finds that the case of *John B. Anderson v. Celebrezze* is substantially and fundamentally different from the case now before the Court—primarily because it involved a candidate in a presidential election—whereas this case is limited to the State of Illinois. However, the Court finds that the Supreme Court in the *Anderson* case laid down the considerations and guidelines to be followed by lower courts in deciding *challenges* to election laws—particularly with regard to the perennial problems of access of candidates to the voters through the ballot—and the problem of the deadline for filing declarations of candidacy. The Court follows *Anderson v. Celebrezze,* not as to its decision in the election in Ohio, but as to its teaching on how to measure the competing interests of the state in maintaining a fair and democratic election procedure, and the constitutional rights of voters and candidates alike to freedom of association under the First Amendment, and Equal Protection of the laws under the Fourteenth Amendment.

In following the Supreme Court's guidelines in this case, the Court concludes that the statute in question—Section 10–3 of the Election Code—strikes a fair and reasonable balance between these two competing interests. The Court is not unmindful of the special, even unique, circumstances presented by this case. Mr. Stevenson is not before the Court as a candidate defeated in a party primary; he is not a "sore loser" but is before the court as a candidate constrained by the Illinois State Constitution to run with a person whose views he finds intolerable, should Mr. Stevenson have chosen to remain on the democratic ticket. This singular problem presented here, though substantial, is still not serious enough to strike down the statute, particularly in light of the availability of equally palatable means of access to the ballot. Mr. Stevenson's problem was not created by the statute, but by circumstances which, to be corrected, would need to be addressed by the state legislature, by the political parties, or by the candidates themselves.

The judicial precedent established by a long list of cases culminating in the *Anderson* decision convinces the Court that the statute challenged here is not unconstitutional. The plaintiffs' rights in this case are not burdened to the extent of those plaintiffs in *Bullock, supra, Williams, supra,* or *Anderson, supra.* The defendants' interests in this case are more substantial than the defendants' interests asserted in those cases, and are similar in weight to those asserted in *Storer, supra,* and *Jenness, supra.* Section 10–3 of the Illinois Revised Code is not unconstitutional.

In light of all of the foregoing, I enter the following determinations and orders:

1. I have subject-matter jurisdiction in that the Eleventh Amendment of the United States Constitution is not a bar to this action;

2. The plaintiffs have standing to bring this case, and there is sufficient case and controversy setting, based upon the facts alleged in the complaint and in the stipulation of facts, and I conclude that any further steps that might be required to be taken by the plaintiffs are a formalistic gesture and do not bar this action;

3. That though the facts in the *Anderson* case are substantially different from those here, the Supreme Court guidelines are to be followed;

4. That Section 10–3 of the Election Code strikes a fair and reasonable balance between the competing interests under the circumstances and is not unconstitutional on its face or as applied;

5. That the plaintiffs' motion for summary judgment should be and by the same hereby is denied; and that the motions by

the defendants should be and by the same hereby is allowed;

6. That all other issues raised by the parties and not addressed herein are moot and, subject to appeal, that hereupon the case should be dismissed.